**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT O**

Case: 1:26-mc-00099
Assigned To : Leon, Richard J.
Assign. Date : 6/24/2026
Description: Misc.

---

*In re* SUBPOENA TO HEIDARPOUR LAW
FIRM, PLLC.

---

CHET MICHAEL WILSON, individually
and on behalf of all others similarly
situated,

        Plaintiff,

  v.

FREEWAY INSURANCE SERVICES OF
AMERICA, LLC,

        Defendant.

---

**ORAL ARGUMENT REQUESTED**

Underlying action:

United States District Court for the
District of Oregon Eugene Division

Case No. 6:25-cv-01869-MC

---

**NON-PARTY HEIDARPOUR LAW FIRM, PLLC'S**
**_EMERGENCY_ MOTION TO STAY AND QUASH A SUBPOENA**

Pursuant to Federal Rule of Civil Procedure 45(d)(3) and Local Civil Rule 7, Non-Party

Heidarpour Law Firm, PLLC ("HLF") respectfully moves this Court to stay and quash the

subpoena served by Defendant Freeway Insurance Services of America, LLC ("Freeway" or

"Defendant") on May 20, 2026 (the "Subpoena"). In particular, HLF requests that the Court (i)

**immediately stay** the Subpoena's demand that an HLF representative testify at a deposition

pending the outcome of this motion; (ii) quash the document requests and deposition sought by

the Subpoena; and (iii) award HLF its costs and fees. This Court is the proper court to decide this

**RECEIVED**

JUN 2 4 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

motion because the Subpoena commands production and testimony in Washington, D.C. Fed. R. Civ. P. 45(d)(3)(A).

HLF's accompanying memorandum of law demonstrates that this relief is appropriate for several reasons. *First*, the deposition of an HLF representative should be immediately stayed because it improperly seeks to depose a non-party law firm about irrelevant and privileged information, and Freeway has not agreed to stay the deposition while this motion is pending. *Second*, the Subpoena should be quashed because it seeks documents and information that are available from other sources, irrelevant, privileged, and not crucial to the preparation of the underlying case. *Finally*, HLF is entitled to its costs and fees because Freeway has not taken reasonable steps to avoid imposing undue burden or expense on HLF and has tried to misuse the discovery process.

This Motion is supported by the contemporaneously filed Memorandum of Points and Authorities and the Declarations of Andrew Heidarpour and Matthew Laroche. A Proposed Order is submitted herewith pursuant to Local Civil Rule 7(c).

## STATEMENT PURSUANT TO LOCAL CIVIL RULE 7(m)

Pursuant to Local Civil Rule 7(m), undersigned counsel certifies that, before filing this motion, counsel for HLF conferred in good faith with counsel for Freeway concerning the relief sought in this Motion. The parties met and conferred on several occasions, including on May 29, June 11, 17, and 23, 2026, exchanged written correspondence during that period, and HLF served written responses and objections to the Subpoena on June 11, 2026. The parties were unable to resolve their disputes.

DATED: June 24, 2026

Respectfully submitted,

Neal Katyal (D.C. Bar No. 462071)
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Matthew J. Laroche (pro hac vice forthcoming)
Peter Farag (pro hac vice forthcoming)
Isabelle Laskero (pro hac vice forthcoming)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
*Attorneys for Non-Party Heidarpour Law Firm, PLLC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC. | Case No.: _____ |
| | **ORAL ARGUMENT REQUESTED** |
| | Underlying action: |
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | United States District Court for the District of Oregon Eugene Division |
| Plaintiff, | Case No. 6:25-cv-01869-MC |
| v. | |
| FREEWAY INSURANCE SERVICES OF AMERICA, LLC, | |
| Defendant. | |

**NON-PARTY HEIDARPOUR LAW FIRM, PLLC'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
*EMERGENCY* MOTION TO STAY AND QUASH A SUBPOENA**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 5

    A.    The Parties and the Underlying TCPA Action ........................................ 5

    B.    The Subpoena Seeks Information Unrelated to the Claim and Defenses in the Underlying Action.......................................................................... 6

    C.    Freeway's Pending Motion to Deny Class Certification and Plaintiff's Pending Motion to Dismiss.................................................................... 8

    D.    Freeway's Unsupported Accusations Against HLF............................. 10

    E.    HLF's Efforts to Confer in Good Faith About the Subpoena.............. 12

LEGAL STANDARD...................................................................................................... 14

ARGUMENT.................................................................................................................. 15

I.    THE COURT SHOULD IMMEDIATELY STAY THE DEADLINE FOR A RULE 30(B)(6) DEPOSITION............................................................................. 15

II.    FREEWAY'S DOCUMENT REQUESTS SHOULD BE QUASHED ........................... 16

    A.    Freeway Should Seek Discovery from Plaintiff and Third Parties, Not Plaintiff's Lawyer ............................................................................. 16

    B.    The Document Requests Seek Information that is Irrelevant to the Claim and Defenses in this Case ................................................................. 17

    C.    The Requests Seek Privileged Information and are Overbroad, Unduly Burdensome, and Disproportionate to the Needs of the Case ............... 20

III.    THE RULE 30(B)(6) DEPOSITION OF NON-PARTY COUNSEL IS SEPARATELY IMPROPER .......................................................................... 21

IV.    IN THE ALTERNATIVE, THE COURT SHOULD DEFER RULING UNTIL THE DISTRICT OF OREGON DECIDES THE PENDING MOTIONS...................... 23

V.    HLF IS ENTITLED TO ITS COSTS AND FEES UNDER RULE 45(D)(1)................ 24

CONCLUSION.............................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abels v. JBC Legal Grp., P.C.,*
    233 F.R.D. 645 (N.D. Cal. 2006) .......................................................................................18

*Alcon Labs., Inc. v. Pharmacia Corp.,*
    225 F. Supp. 2d 340 (S.D.N.Y. 2002) ...............................................................................23

*Apollo Grp., Inc. v. United States Dep't of Educ. (In re Appollo Grp., Inc.),* 329 F.
    App'x 283, 284 (D.C. Cir. 2009) ..................................................................................19, 23

*In re Application for an Order Pursuant to 28 U.S.C. § 1782,* No. 17-1477, 2017
    WL 3708028, at *4–5 (D.D.C. Aug. 18, 2017) ................................................................22

*BMO Harris Bank, N.A. v. Richert Funding, LLC,*
    2017 WL 11627485 (N.D. Ga. July 3, 2017) ...................................................................25

*Brandon Chang v. United Am. Sec. LLC,*
    2026 WL 1661436 (D.D.C. June 9, 2026) ........................................................................15

*Burford v. Acct. Prac. Sales, Inc.,*
    786 F.3d 582 (7th Cir. 2015) ............................................................................................11

*Burlodge Ltd. v. Stadex Int'l Corp.,*
    257 F.R.D. 12 (D.D.C. 2009) ...........................................................................................20

*Coleman v. D.C.,*
    284 F.R.D. 16 (D.D.C. 2012) ...............................................................................16, 21, 22

*Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n,*
    No. 97-cv-1810, 1999 WL 1815561 (D.D.C. Feb. 2, 1999) ............................................21

*Cusumano v. Microsoft Corp.,*
    162 F.3d 708 (1st Cir. 1998) .............................................................................................14

*Dell Inc. v. DeCosta,*
    233 F. Supp. 3d 1 (D.D.C. 2017) ................................................................................14, 21

*Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP,*
    339 F.R.D. 334 (D.D.C. 2021) ..............................................................................14, 16, 19

*Edwards v. Gordon & Co.,*
    94 F.R.D. 584 (D.D.C. 1982) ...........................................................................................19

ii

*First Fed. Sav. & Loan Ass'n of Walla Walla v. C.P.R. Constr., Inc.*,
689 P.2d 981 (Or. Ct. App. 1984)...............................................................................11

*Flatow v. Islamic Republic of Iran*,
201 F.R.D. 5 (D.D.C. 2001)........................................................................................17

*FMC Corp. v. U.S. EPA*,
279 F.R.D. 14 (D.D.C. 2011)......................................................................................11

*Goldberg v. Amgen, Inc.*,
123 F. Supp. 3d 9 (D.D.C. 2015) ................................................................................23

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
263 F.R.D. 1 (D.D.C. 2009)........................................................................................15

*Hesco Bastion Ltd. v. Greenberg Traurig LLP*,
No. 09-0357, 2009 WL 5216932 (D.D.C. Dec. 23, 2009)..........................................17

*Huntair, Inc. v. Climatecraft, Inc.*,
254 F.R.D. 677 (N.D. Okla. 2008)..............................................................................25

*Jacobsen v. Oliver*,
555 F. Supp. 2d 72 (D.D.C. 2008) ..............................................................................11

*Jiang v. NVIDIA Corp.*,
No. 26-mc-18, 2026 WL 962496 (D.D.C. Apr. 9, 2026)......................................19, 22

*Legal Voice v. Stormans Inc.*,
738 F.3d 1178 (9th Cir. 2013) ....................................................................................24

*Menashe v. Covington & Burling LLP*,
552 F. Supp. 3d 35 (D.D.C. 2021)..............................................................................17

*In re Mot. to Compel Compliance with Subpoena Directed to Cooke Leg. Grp, PLLC*,
333 F.R.D. 291 (D.D.C. 2019).....................................................................................20

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
659 F. Supp. 3d 54 (D.D.C. 2023) .........................................................................14, 21

*Pederson v. Preston*,
250 F.R.D. 61 (D.D.C. 2008).......................................................................................19

*Phillips & Cohen, LLP v. Thorpe*,
300 F.R.D. 16 (D.D.C. 2013)..................................................................................17, 20

*Saint-Jean v. Emigrant Mortg. Co.*,
2015 WL 13735434 (E.D.N.Y. Oct. 7, 2015)...........................................................23, 25

iii

*Shelton v. American Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ................................................................................14

*Sourgoutsis v. U.S. Capitol Police*,
    323 F.R.D. 100 (D.D.C. 2017).........................................................................14, 16

*Stanich v. Travelers Indem. Co.*,
    259 F.R.D. 294 (N.D. Ohio 2009) .........................................................................19

*Sterne Kessler Goldstein & Fox P.L.L.C. v. Edwards Lifesciences Corp.*,
    2013 WL 12303364 (D.D.C. Apr. 16, 2013) ..........................................................17

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
    276 F.R.D. 376 (D.D.C. 2011)......................................................................... *passim*

*In re Subpoena to Goldberg*,
    693 F. Supp. 2d 81 (D.D.C. 2010) .........................................................................16

*Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*,
    255 F.R.D. 340 (W.D.N.Y. 2009)...........................................................................22

*United States v. Paxson*,
    861 F.2d 730 (D.C. Cir. 1988)................................................................................20

*Upjohn Co. v. United States*,
    449 U.S. 383 ...........................................................................................................20

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007).................................................................................14

*Williams v. Johanns*,
    No. 03-2245, 2006 WL 3826967 (D.D.C. Dec. 28, 2006)......................................15

*Wilson v. Scruggs*,
    No. 3:02-cv-525, 2003 WL 23521358 (S.D. Miss. Apr. 10, 2003) ........................21

**Statutes**

47 U.S.C. § 227(c) .........................................................................................................5

Telephone Consumer Protection Act...............................................................................1

**Other Authorities**

ABA Rules of Professional Conduct R. 1.2(a) ..............................................................11

Fed. R. Civ. P. 26.....................................................................................................14, 16

Fed. R. Civ. P. 30.................................................................................................1, 4, 25

iv

Fed. R. Civ. P. 41 ........................................................................................................8, 9

Fed. R. Civ. P. 45 .............................................................................................. *passim*

Non-party Heidarpour Law Firm, PLLC ("HLF") moves under Federal Rule of Civil Procedure 45(d)(3) to stay and quash the subpoena served by Defendant Freeway Insurance Services of America, LLC ("Freeway" or "Defendant") on May 20, 2026 (the "Subpoena"). In particular, HLF requests that the Court (i) stay the Rule 30(b)(6) deposition of an HLF representative as soon as possible and by no later than June 26, 2026 (the current Subpoena compliance deadline), and (ii) quash the document requests and deposition sought by the Subpoena. Alternatively, the Court should defer ruling on whether to quash the Subpoena until after the District of Oregon resolves the pending motion to dismiss the underlying case. This Court is the proper court to decide this motion because the Subpoena commands production and testimony in Washington, D.C. Fed. R. Civ. P. 45(d)(3)(A).

## **PRELIMINARY STATEMENT**

Freeway has aimed a sweeping Rule 45 Subpoena at its opponent's counsel for information and testimony having no relevance to the merits of the underlying action and that implicate HLF's privileged relationship with its client. This is improper and the Subpoena must be quashed.

The underlying action is a consumer case against Freeway, not a case about HLF. On October 12, 2025, Chet Michael Wilson ("Plaintiff") sued Freeway in the District of Oregon under the Telephone Consumer Protection Act ("TCPA"), alleging that Freeway sent him three marketing text messages in June 2024 to a cellular number registered on the National Do-Not-Call Registry, without his permission. Plaintiff brought his case as a putative class action on behalf of others who also received unsolicited messages from Freeway. The only contested merits issue in the underlying action is narrow: whether Freeway had consent to send messages to Plaintiff and other members of the class.

1

Mr. Wilson retained HLF in October 2024—well after Freeway sent the text messages in question—to try to resolve his issues with Freeway, and when those discussions failed, HLF referred Mr. Wilson to other attorneys. One of those attorneys, Andrew Roman Perrong of Perrong Law LLC, filed the underlying action on Mr. Wilson's behalf and is counsel of record.

Notwithstanding all of this, Freeway served HLF with a wide-ranging Subpoena that commands it to produce documents across twelve requests and to designate a witness to testify on nine deposition topics. The requests and topics demand the very heart of a law firm's protected work: HLF's communications with its client; HLF's intake, screening, and referral decisions; the identity and "nature of the work" of every person who performed "claim-identification," "message-monitoring," "intake," or "lead-review" work at the firm's direction; and HLF's "fee-sharing," "co-counsel," and other financial arrangements. Three of the requests abandon any tie to this case or Freeway altogether and reach "any TCPA claim asserted by Wilson," "each TCPA claim, demand, lawsuit, or potential lawsuit involving Wilson," and "each letter" HLF sent on Mr. Wilson's behalf, going back to January 1, 2023. Defendant's counsel has said this likely reaches *over 100 matters beyond this one*.

Freeway's principal response is that the Subpoena supports its pending motion to deny class certification. But Freeway has told the District of Oregon that its motion is ready to be decided "now," "without further discovery," because "no amount of discovery" can cure the defects it asserts. Ex. D, Freeway's Mot. to Den. Class Certification at 2, 4, 18–20.[1] It has repeated materially similar assertions in its opposition to Plaintiff's motion for voluntary dismissal, contending it has developed a "more-than-sufficiently developed adequacy record." Ex. F, Freeway's Opp. to Mot. to Dismiss at 10. In fact, Freeway's adequacy and predominance

---

[1]    "Ex." refers to the Exhibits to the Declaration of Matthew Laroche in support of this Motion.

2

arguments rest on the record already before that Court—Mr. Wilson's litigation history and public statements, and the individualized nature of consent across the putative class. None of this turns on HLF's files.

Underlying all of this is a campaign of serious but baseless accusations against HLF. Freeway has accused the firm, in court filings and in correspondence, of "manufacturing" claims and orchestrating a fraudulent litigation scheme. Ex. D, Freeway's Mot. to Den. Class Certification at 21–24. These are grave charges that Freeway levels even as it concedes it does not "yet have forensic evidence" to support them. *See* Ex. G, Email Correspondence with Freeway at 18. In a good-faith effort to put the accusations to rest, HLF voluntarily produced documents confirming that HLF had no contact with Mr. Wilson until October 2024, months after the June 2024 texts, and therefore had no role in the conduct Freeway has placed at issue. *See* Laroche Decl. at ¶ 10. Rather than accept that its accusations are baseless, Freeway has pressed for more, demanding HLF's privileged documents and a deposition so that it can continue its purported "investigation." A non-party law firm should not be required to surrender its privileged work, or sit for a deposition about it, to fuel an investigation into unfounded accusations that have nothing to do with the claim or defenses in the underlying case.

The Court should quash the Subpoena for several reasons. As an initial matter, courts disfavor subpoenas served on counsel and heavily scrutinize them. Subpoenas to attorneys are routinely quashed where the information is available from other sources, irrelevant, privileged, and not crucial to the preparation of the case. *See infra* Section I (collecting cases). Each of those considerations applies here. All the information sought by the Subpoena is available from or through Mr. Wilson and, in some circumstances, other third parties. Even if it were not, nothing sought by the Subpoena is relevant to the core issue in the underlying action—whether Freeway

3

had consent to message Mr. Wilson. And forcing HLF to respond to the Subpoena will directly implicate its ethical obligations to protect client confidences and attorney work product. To take one example, Freeway seeks to depose HLF about "the nature and substance" of its communications with Mr. Wilson, which is plainly protected by the attorney-client privilege.

Beyond that, Plaintiff has moved to dismiss his case with prejudice and Freeway does not oppose that motion, only its sequencing, wanting its motion to deny class certification, which would be mooted by dismissal, to be decided first. Once Plaintiff's motion is granted, the Subpoena will be moot. There is no valid reason why HLF should be forced to devote resources responding to a Subpoena when the case will inevitably be dismissed.

At bottom, the Subpoena is wholly improper. It targets a party's counsel; demands attorney-client communications and work product; sweeps in potentially 100 other matters untethered to this case; and burdens a small non-party law firm with discovery aimed at its core protected functions. Freeway concedes that the Subpoena is not really about the underlying case but is a purported effort to "investigate" perceived wrongs that "may ultimately lead to separate proceedings." Ex. D, Freeway's Mot. to Den. Class Certification at 23. That concession is dispositive. Civil discovery is not an investigative tool to develop evidence of purported misconduct in other cases.

For these reasons, as detailed below, the Court should immediately stay the Rule 30(b)(6) deposition and then quash the Subpoena in full. In the alternative, the Court should stay deciding this motion until the District of Oregon rules on Plaintiff's pending motion to dismiss. The Court also should award HLF its costs and reasonable attorney's fees under Rule 45(d)(1).

4

## BACKGROUND

### A.    The Parties and the Underlying TCPA Action

Plaintiff is an individual who resides in Oregon. *See Wilson v. Freeway Ins. Servs. of Am.,
LLC*, No. 6:25-cv-01869-MC (D. Or. 2025), Dkt. 1 ("Complaint") at ¶ 6. Freeway is an insurance
services company. *Id.* at ¶ 7. On October 12, 2025, Mr. Wilson sued Freeway in the District of
Oregon, individually and on behalf of a putative class, under the TCPA's Do-Not-Call provisions,
47 U.S.C. § 227(c). *Id.* at ¶¶ 1–2. The complaint alleges that Freeway sent Plaintiff three
marketing text messages on June 5, 6, and 8, 2024, to his cellular telephone number, which he had
registered on the National Do-Not-Call Registry, without his prior express invitation or
permission. *Id.* at ¶¶ 20–24.

Freeway's defense is that it had permission. Freeway contends that someone submitted
Mr. Wilson's telephone number (the "Subject Number") through an online insurance lead form
dated June 4, 2024, that the submission carried TCPA-compliant consent, and that Freeway sent
the texts in reliance on that consent. Ex. D, Freeway's Mot. to Den. Class Certification at 5–6.
The disputed merits question is therefore singular: who submitted the Subject Number, and
whether that submission gave permission to contact it. Freeway frames the inquiry the same way,
describing "the core issue in this case" as the "identify who requested the calls at issue." *Id.* at 3.

HLF is not counsel of record in the underlying action. HLF is a small law firm operated
by attorney Andrew Heidarpour, who employs one other lawyer and limited support staff.
Heidarpour Decl. at ¶ 2. Mr. Wilson engaged HLF in October 2024 in an effort to resolve his
issues with Freeway. When those discussions failed, HLF referred Mr. Wilson to other attorneys
who subsequently filed the underlying action. *Id.* at ¶ 7. HLF had no relationship with Mr. Wilson
until October 2024, months after the June 2024 texts at issue. *Id.* at ¶ 5. HLF therefore had no

5

contact with Mr. Wilson, and no role in any matter relating to him, when Freeway sent the text messages that serve as the basis for the underlying action.

**B.     The Subpoena Seeks Information Unrelated to the Claim and Defenses in the Underlying Action**

The Subpoena includes twelve document requests and nine deposition topics. *See* Ex. A, Freeway's Subpoena at 3. The nine deposition topics largely mirror Document Requests 1 through 9; the document requests then go further, adding three requests for information far beyond Freeway with no testimonial counterpart. The demands sort into four categories.

**Category 1:  Origination and "Manufacturing" (Requests 1–3, 8; Topics 1–3, 8).**[2] These document requests demand the date when HLF "first became aware" of Freeway's texts and the "source" of that awareness; when HLF "first communicated" with Mr. Wilson concerning Freeway; and when, and to whom, HLF "first referred" any potential claim against Freeway on behalf of Mr. Wilson. Ex. A, Freeway's Subpoena, Reqs. 1–3, 8; Notice of Dep., Topics 1–3, 8. The deposition topics seek the same information, as well as "the nature and substance" of HLF's communications with Mr. Wilson. These requests and topics are purportedly designed to test Freeway's theory that HLF "manufactured" claims on Mr. Wilson's behalf. *See* Ex. D, Freeway's Mot. to Den. Class Certification at 13–16.

**Category 2:  Device Access and Forensic Work (Requests 4–7; Topics 4–7).** These requests demand the identity of every person who "accessed, monitored, reviewed, searched, downloaded, exported, or otherwise used" any iCloud, Apple, email, cloud-storage, or device account "associated with Wilson or the Subject Number"; the "date, time, IP address, device,

---

[2]     HLF understands that Freeway is not seeking additional documents responsive to Requests 1, 2, and 8, but Freeway is seeking nearly identical information through deposition topics 1, 2, and 8, which it has not withdrawn. *See* Ex. G, Email Correspondence with Freeway at 2-3; *Id.*, Ex. A, Freeway's Subpoena, Reqs. 1, 2, 8; Notice of Dep., Topics 1, 2, 8.

browser, application, user agent, geographic location, and method of access" for each such instance; and every "username, login credential, authentication method, access token, shared credential, [or] password-management tool" used. The deposition topics go even further and seek the "nature of the work" of every person who performed "technical, forensic, data-mining, claim-identification, message-monitoring, intake, or lead-review." Ex. A, Freeway's Subpoena, Reqs. 4–7; Notice of Dep., Topics 4–7. Like Category 1, these requests and topics are purportedly designed to test Freeway's theory that HLF "manufactured" claims on Mr. Wilson's behalf.

**Category 3: Fee and Financial Interests (Request 9; Topic 9).** This request and deposition topic demand any "agreement, understanding, referral arrangement, fee-sharing arrangement, co-counsel arrangement, consulting arrangement, or other financial interest" HLF has in any potential claim by Mr. Wilson against Freeway. Ex. A, Freeway's Subpoena, Req. 9; Notice of Dep., Topic 9. This request and topic are purportedly designed to test Freeway's theory that HLF had inappropriate financial arrangements with Mr. Wilson.

**Category 4: Demands About Other TCPA Matters (Requests 10–12).** These document requests abandon any link to Plaintiff's underlying action and Freeway. Request 10 seeks HLF's financial interest in "any TCPA claim asserted by Wilson"; Request 11 seeks "each TCPA claim, demand, lawsuit, or potential lawsuit involving Wilson" that HLF referred "from January 1, 2023 to the present"; and Request 12 seeks "each letter" HLF sent on Mr. Wilson's behalf regarding a potential TCPA claim over that same period. Ex. A, Freeway's Subpoena, Reqs. 10–12. Freeway represents that these requests purportedly reach over 100 other matters. Ex. F, Freeway's Opp. to Mot. to Dismiss at 5. As with Category 3, these requests are purportedly designed to test Freeway's theory that HLF had inappropriate financial arrangements with Mr. Wilson. Ex. D, Freeway's Mot. to Den. Class Certification at 1, 13; Ex. F, Freeway's Opp. to Mot. to Dismiss at 1, 4.

**C.**   **Freeway's Pending Motion to Deny Class Certification and Plaintiff's Pending Motion to Dismiss**

Two motions are pending in Plaintiff's action before the District of Oregon that bear directly on the Subpoena. The disposition of those motions will most likely moot the Subpoena.

**Freeway's Motion to Deny Class Certification.** On May 16, 2026, Freeway moved to deny class certification. Ex. D, Freeway's Mot. to Den. Class Certification at 1. That motion argues that Mr. Wilson is an inadequate class representative and that individualized questions of consent, standing, arbitration, and residential-line status defeat predominance. Critically for present purposes, Freeway argues that the motion should be decided on the existing record: it is "abundantly clear now, without further discovery, that this case cannot proceed as a class action," *id.* at 2; "[n]o amount of discovery will solve these problems, so the Court should deny class certification now," *id.* at 4; and "no further discovery is needed to confirm that this case cannot be certified as a class action," *id.* at 18. Mr. Wilson has not moved to certify a class and has asked the Court to stay his deadline to respond to the motion until after the motion to voluntary dismiss is decided.

**Plaintiff's Motion to Voluntarily Dismiss.** Plaintiff has moved under Rule 41(a)(2) to voluntarily dismiss his individual claims with prejudice and the putative class claims without prejudice, and, in the same motion, to stay discovery and extend his deadline to respond to the certification motion. Ex. E, Plaintiff's Voluntary Mot. to Dismiss at 1. The sequence leading to that motion matters because Freeway has elsewhere portrayed it as evidence of a litigation "scheme."

Plaintiff first sought to end this case on May 15, 2026. That day, his counsel circulated to Freeway a proposed stipulation of voluntary dismissal with prejudice under Rule 41(a)(1)(A)(ii), which would have ended the case without burdening the Court. Ex. E, Plaintiff's Voluntary Mot.

to Dismiss at 1–2. Freeway refused to sign it unless Plaintiff agreed to several conditions that went far beyond the underlying action, such as dismissing all Mr. Wilson's unrelated cases, conceding that he is an inadequate class representative, and paying Freeway's attorney's fees. *Id.* at 2, 8–9. Also on May 15, Plaintiff moved for voluntary dismissal under Rule 41(a)(2), but he withdrew that motion the same day so that the parties could continue their meet-and-confer efforts. *Id.* at 1–2.

The next day, Freeway filed its motion to deny class certification and shortly thereafter served the Subpoena. Ex. D, Freeway's Mot. to Den. Class Certification at 1; Heidarpour Decl. at ¶ 8. After a further conferral on May 28 failed to resolve the dispute, Plaintiff renewed his dismissal motion on June 1, 2026, again seeking dismissal of his claim with prejudice and representing that he does not seek to refile in any forum. Ex. E, Plaintiff's Voluntary Mot. to Dismiss at 1–2, 7. Freeway opposed the motion on June 15, 2026, and, on June 18, 2026, separately moved to extend the discovery period by sixty days following a ruling on the motion. Ex. F, Freeway's Opp. to Mot. to Dismiss.

Freeway characterizes this sequence, and the same-day withdrawal in particular, as a suspicious maneuver to evade an adverse ruling and preserve a litigation "scheme." Ex. F, Freeway's Opp. to Mot. to Dismiss at 14. The record does not bear that out. The withdrawal was not an evasion; it occurred because the parties had agreed to keep conferring, and Mr. Wilson renewed the motion only after that conferral reached an impasse. Ex. E, Plaintiff's Voluntary Mot. to Dismiss at 1–2. And the relief Mr. Wilson seeks is the opposite of gamesmanship: he asks to dismiss his own claims with prejudice, the most adverse posture a plaintiff can voluntarily accept, and represents that he will not refile in any forum. *Id.* at 7. A litigant scheming to keep his claims alive does not extinguish them for good.

### D.    Freeway's Unsupported Accusations Against HLF

Freeway's motion papers make clear that the Subpoena is not designed to seek information relevant to the claim or any defenses in the underlying action. Tellingly, Freeway "does not ultimately oppose dismissal"; it contests only "the sequence in which the Court takes up the pending motions and the terms on which it grants dismissal," Ex. F, Freeway's Opp. to Mot. to Dismiss at 3-4. Freeway argues that it needs discovery in two categories before this case is dismissed: information concerning (i) purported claim manufacturing, and (ii) how Mr. Wilson's claims are "identified, referred and monetized." *Id.* at 12.

This discovery, some of which Freeway seeks through the Subpoena, is purportedly designed to support the serious accusations Freeway has pressed against HLF. Freeway has accused HLF of being an undisclosed "shadow" firm that secretly originates and profits from Mr. Wilson's TCPA claims, and that HLF "manufactur[es]" such claims as part of what Freeway calls a "lawyer-driven fraud on the federal courts." Ex. D, Freeway's Mot. to Den. Class Certification at 10–16; Ex. F, Freeway's Opp. to Mot. to Dismiss at 2. None of these accusations have merit.

*First*, HLF does not "manufacture" claims on behalf of anyone. Freeway has no evidence supporting this, and HLF has produced documents showing its accusation is demonstrably false. In particular, HLF produced materials reflecting that Mr. Wilson did not contact or become a client of HLF until October 2024, months after the June 2024 texts underlying Mr. Wilson's claim were sent or the putative consent obtained. Heidarpour Decl. at ¶ 5. Freeway also previously acknowledged that an individual with no connection to HLF purportedly provided consent to send the texts in question. *Id.* at ¶ 6.[3]

---

[3]    Freeway also has suggested potential wrongdoing because an HLF employee has a prior conviction from a decade ago in an unrelated matter. That person, who is one of Mr. Heidarpour's

*Second*, Freeway claims that HLF originated fraudulent cases because its engagement letter with Mr. Wilson included a "power of attorney" provision allowing HLF to select, settle, and pursue his TCPA claims. Ex. F, Freeway's Opp. to Mot. to Dismiss, at 1, 11, 13, 18. An engagement agreement is not improper simply because it addresses the selection, pursuit, or settlement of a client's claim, and HLF does not resolve claims without appropriate client authorization. *See Jacobsen v. Oliver*, 555 F. Supp. 2d 72, 83 (D.D.C. 2008) (right-to-settle clause in attorney engagement letter did not breach Rule 1.2(a) or any fiduciary duty); *First Fed. Sav. & Loan Ass'n of Walla Walla v. C.P.R. Constr., Inc.*, 689 P.2d 981, 984–85 (Or. Ct. App. 1984) (enforcing settlement made under engagement letter's express power-of-attorney clause); *see also* Heidarpour Decl. at ¶ 3. Regardless, HLF's engagement letter is not the operative agreement in Mr. Wilson's underlying action or any other litigated matter referred by HLF. HLF does not file litigated cases. *Id.* at ¶ 4. If a case needs to be litigated, HLF refers the case to co-counsel, who executes a new engagement letter with the client and evaluates whether or not to bring the action. *Id.* That is exactly what happened in Mr. Wilson's underlying action, and the governing co-counsel engagement letter contains no such "power of attorney" language.

*Third*, Freeway identifies a few cases that it claims follow a similar pattern as the underlying action. Ex. F, Freeway's Opp. to Mot. to Dismiss at 21. HLF was not counsel of record in any of those claims and did not make decisions about whether to bring or dismiss them. Regardless, the fact that a few TCPA claims were previously dismissed does not support that HLF is involved in a wide-ranging fraudulent scheme on federal courts. Cases are dismissed for a variety of good-faith reasons. *See FMC Corp. v. U.S. EPA*, 279 F.R.D. 14, 17–18 (D.D.C. 2011)

---

family members, is not a lawyer and provides secretarial services under the direction of Mr. Heidarpour. Heidarpour Decl. at ¶ 2. Here, again, Freeway simply speculates that the employee may have done something wrong without any evidence whatsoever.

11

(changed circumstances for voluntary dismissal that "[did] not evidence bad faith," and mere speculation of an improper motive is "insufficient to demonstrate bad faith"); *Burford v. Acct. Prac. Sales, Inc.*, 786 F.3d 582, 589 (7th Cir. 2015) (finding a voluntary dismissal "says nothing definitive about [a party's] view of the merits or about its reasons for filing"). And numerous other cases originated through HLF are successfully litigated and resolved by co-counsel.[4] Heidarpour Decl. at ¶ 4.

*Finally*, Freeway accused HLF of charging "unethical" and "excessive" fees and failing to file "certificates of interested persons" in litigated cases. Ex. D, Freeway's Mot. to Den. Class Certification at 18. These allegations are meritless too. As the operative engagement letter in this case makes clear, Mr. Wilson's attorneys are compensated for their attorney's fees, which are set by the Court, and HLF receives 30% of whatever is awarded, not "over 90%" as Freeway suggests. *Id.* at 11 & n. 3. Freeway has also identified no rule that required HLF to list itself on any certificate of interested persons simply because it was entitled to a portion of any attorney's fees recovery. *Id.* at 10-11.

Freeway's hyperbolic allegations are damaging to HLF, which is a reputable law firm that has never been disciplined or sanctioned for its work. Heidarpour Decl. at ¶ 2. Freeway's accusations also do not come close to justifying the broad ranging fishing expedition called for by the Subpoena.

### E.    HLF's Efforts to Confer in Good Faith About the Subpoena

---

[4]    Freeway has also alleged that HLF has sent similar demand letters on Wilson's behalf "that haven't yet matured into putative class actions." Ex. D, Freeway's Mot. to Den. Class Certification at 10. But because of its small size, HLF does not file cases through which a class action would be certified. *See* Heidarpour Decl. at ¶ 4.

HLF has conferred with Freeway on several occasions in a good faith effort to resolve the Subpoena. Laroche Decl. at ¶ 8. Although HLF has always taken the position that Freeway is not entitled to anything, it has nevertheless produced a limited set of materials to address Freeway's accusations. *First*, HLF produced documents, including HLF's initial engagement letter with Mr. Wilson, showing that HLF did not become involved with Plaintiff until October 2024, well after the June 2024 texts were sent in this case. *Id.* at ¶ 10. *Second*, HLF produced Mr. Wilson's engagement letter with counsel of record in the underlying action, which is the operative engagement letter reflecting standard terms for a litigated matter. *Id.* HLF has also explained to Freeway that the HLF employee with a prior conviction provides secretarial services at HLF under attorney supervision, and that HLF is not litigation counsel in the underlying action or the other TCPA matters that were dismissed and so did not decide when to bring, settle, or dismiss those claims. Heidarpour Decl. at ¶ 4; Laroche Decl. at ¶ 8.

These materials and information should have put an end to Freeway's purported investigation. Yet, the opposite is happening. Freeway's counsel has served, and threatened to serve, materially similar subpoenas on HLF in other matters. For example, on June 11, 2026, counsel for Freeway sent HLF a Subpoena in *Bronstin v. S. Cal. Edison Co.*, No. 8:25-cv-2334 (C.D. Cal.), a case in which HLF has no role whatsoever. Ex. H, Email with Freeway regarding Bronstin Subpoena. Although counsel for Freeway subsequently withdrew that Subpoena, Freeway's conduct and promise to serve more discovery requests reinforces that it is on a broad fishing expedition disconnected from the claim and defenses in this matter. And when HLF twice asked Freeway to identify any specific evidence that HLF engaged in wrongdoing, Freeway declined and simply reiterated the allegations in its motion papers. Ex. G, Email Correspondence

with Freeway at 18. A party with no evidence of wrongdoing is not entitled to search a non-party law firm's files in the hope of discovering evidence.

## LEGAL STANDARD

Rule 45 protects non-parties from abusive process. On a timely motion, the Court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). In applying Rule 45, "[c]ourts must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (quoting *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017)).

The scope of any subpoena is bound by Rule 26. A subpoena may command only non-privileged discovery that is relevant to a "claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Sourgoutsis v. U.S. Capitol Police*, 323 F.R.D. 100, 105 (D.D.C. 2017). The court must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Rule 45's privilege and undue-burden protections apply to both document and testimonial subpoenas, *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007), and the burden imposed on a non-party "is a factor entitled to special weight in evaluating the balance of competing needs," *id.* at 509 (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *accord Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339 (D.D.C. 2021).

A subpoena directed at a party's counsel draws heightened scrutiny. Courts permit discovery from a party's counsel only where the information sought is unavailable from other

14

sources, is relevant and non-privileged, and is crucial to the preparation of the case. *See Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *see also Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011). And "when seeking to depose opposing counsel, the cards are stacked against the requesting party from the outset and they must prove the deposition's necessity." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009).

## ARGUMENT

### I.    THE COURT SHOULD IMMEDIATELY STAY THE DEADLINE FOR A RULE 30(B)(6) DEPOSITION

The Court should immediately stay the deposition sought by the Subpoena before the compliance deadline of June 26, 2026. As outlined below, the deposition topics (as well as the document requests) are improper, seek privileged information, and must be quashed. *See infra* Sections II and III. Freeway will not be prejudiced by a stay because HLF has agreed not to argue that the deposition is untimely based on the current fact discovery cutoff pending its motion to quash. Ex. G, Email Correspondence with Freeway at 8. In similar circumstances, courts routinely stay the compliance deadline until a motion to quash is briefed, argued, and decided. *See Brandon Chang v. United Am. Sec. LLC*, 2026 WL 1661436, at *4 (D.D.C. June 9, 2026) (staying deposition based on plaintiffs' motion to quash and other pending motions); *Williams v. Johanns*, 2006 WL 3826967, at *1 (D.D.C. Dec. 28, 2006) (similar). This Court should do the same.[5]

---

[5] Earlier today, Freeway stated that it would agree to a stay so long as HLF agreed to provide additional information concerning the execution of an engagement letter in the underlying matter. Ex. G, Email Correspondence with Freeway at 2-3. It is unreasonable to condition agreement to a stay on HLF providing this information, which has no apparent relevance to this action and was not requested by the Subpoena.

15

## II.    FREEWAY'S DOCUMENT REQUESTS SHOULD BE QUASHED

The Subpoena does not come close to satisfying the heightened scrutiny required of discovery targeted at a party's counsel. *See, e.g.*, *Sterne Kessler Goldstein & Fox, PLLC*, 276 F.R.D. at 380. The document requests should be quashed because they seek information that is: (i) available from Plaintiff and other third parties; (ii) irrelevant to any claim or defense in this case; (iii) privileged and protected material; and/or (iv) facially overbroad and disproportionate to the needs of the case.

### A.    Freeway Should Seek Discovery from Plaintiff and Third Parties, Not Plaintiff's Lawyer

A threshold problem with the Subpoena is that it seeks information available from or through Plaintiff and third parties. Documents and information reflecting the date of Mr. Wilson's communications with HLF about Freeway (Category 1), HLF's work on behalf of Mr. Wilson concerning Freeway (Category 2), HLF's financial arrangements with Mr. Wilson concerning Freeway (Category 3), and HLF's work for Mr. Wilson on unrelated claims (Category 4), is all available from or through Mr. Wilson or, in some circumstances (*e.g.*, information about who purportedly accessed Plaintiff's device), other third parties.

Freeway should be seeking this information from those parties, not one of Plaintiff's lawyers who is not counsel of record in the underlying action. Rule 26(b)(2)(C)(i) directs the Court to limit discovery obtainable "from some other source that is more convenient, less burdensome, or less expensive." Freeway has those sources available to it and, in fact, has sought discovery from them. Ex. D, Freeway's Mot. to Den. Class Certification at 17–18 (detailing that Freeway has served discovery requests from Plaintiff and other third parties). If Freeway believes Mr. Wilson or some other party is withholding responsive material, its remedy is to move to compel those parties—not to leapfrog Plaintiff and subpoena his lawyer. *See* Fed. R. Civ. P. 45(d);

*Coleman v. D.C.*, 284 F.R.D. 16, 19 (D.D.C. 2012) (rejecting a bid to subpoena counsel where the requesting party failed to compel a non-attorney witness before "jumping straight" to the attorney).

Courts in this District routinely quash non-party subpoenas, including subpoenas to law firms, when the requested information is available from the parties or more convenient sources. *See Diamond Servs.*, 339 F.R.D. at 339–40 (quashing subpoenas to two law firms because "less burdensome alternatives" existed, including discovery from the parties); *Sourgoutsis*, 323 F.R.D. at 112 (quashing non-party subpoena where the requesting party "already has received that information directly from" the party); *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 88 (D.D.C. 2010) (alternative sources that are "more convenient [or] less burdensome" should be explored first). That is especially true where the non-party is a law firm. *See Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18–19 (D.D.C. 2013) (quashing a subpoena to a non-party law firm where the requested materials were irrelevant and their production would be unduly burdensome); *Sterne Kessler Goldstein & Fox P.L.L.C. v. Edwards Lifesciences Corp.*, 2013 WL 12303364, at *4–5 (D.D.C. Apr. 16, 2013) (quashing a subpoena to a non-party law firm on attorney-client-privilege and undue-burden grounds); *Menashe v. Covington & Burling LLP*, 552 F. Supp. 3d 35, 41–45 (D.D.C. 2021) (denying discovery sought from a law firm as irrelevant, unduly burdensome, privileged, and overbroad).

**B.    The Document Requests Seek Information that is Irrelevant to the Claim and Defenses in this Case**

Even if the Subpoena was directed to the correct party (it is not), it does not seek information relevant to whether Freeway had consent to send messages to Mr. Wilson's phone, the core issue in this case. When and how HLF learned of Mr. Wilson's potential claims (Category 1); who did forensic analysis of Mr. Wilson's phone (Category 2); what financial arrangement HLF has with Mr. Wilson (Category 3); and information about other TCPA claims related to Mr.

Wilson (Category 4) all have no bearing on that issue. Courts routinely quash subpoenas in these circumstances too. *See Hesco Bastion Ltd. v. Greenberg Traurig LLP*, No. 09-0357, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009) (declining to enforce a subpoena to a law firm where the documents sought were "not relevant to the claims or defenses, or, more broadly, the subject matter" of the underlying case); *Flatow v. Islamic Republic of Iran*, 201 F.R.D. 5, 8 (D.D.C. 2001) (declining to enforce a Rule 45 subpoena that sought "information which is irrelevant or unnecessary").

Freeway does not appear to dispute that its requests are irrelevant to the consent issue. Instead, it argues that the requests are relevant to class certification and to "investigate" purported misconduct. Ex. D, Freeway's Mot. to Den. Class Certification at 23. Both justifications fail.

*First*, no one is affirmatively seeking class certification. Mr. Wilson has not moved to certify a class and seeks to end the case. Freeway also has represented that it does not need discovery for that motion. Freeway argued that it is "abundantly clear now, without further discovery, that this case cannot proceed as a class action," Ex. D, Freeway's Mot. to Den. Class Certification at 2; that "[n]o amount of discovery will solve these problems," *id.* at 4; and that "no further discovery is needed to confirm that this case cannot be certified as a class action," *id.* at 18. Freeway cannot represent to the trial court that its motion is ripe for decision on the existing record while telling this Court that it needs sweeping discovery from a non-party to support that same motion. The positions are irreconcilable.

In any event, Freeway's adequacy theory turns on Mr. Wilson's conduct and the existing record, and its predominance theory turns on the individualized nature of consent across the class. Ex. D, Freeway's Mot. to Den. Class Certification at 24–28. Neither issue is illuminated by the discovery sought here, including documents about numerous other unrelated cases. A party may

18

not use the certification inquiry as a passkey to a law firm's unrelated cases. Courts confronted with similar tactics have refused to compel even a named plaintiff's own fee agreement on adequacy grounds where the demand rested on "attenuated and vague hearsay" rather than evidence. *Abels v. JBC Legal Grp., P.C.*, 233 F.R.D. 645, 647–48 (N.D. Cal. 2006) (denying motion to compel plaintiff's fee agreement in class action as irrelevant); *see also Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009) ("Most courts, however, find [fee agreement] discovery irrelevant to the issue of class certification."). The demands here, directed at a non-party firm's work on over 100 unrelated matters since 2023, is far more sweeping and far less tethered to anything relevant.

*Second*, Freeway also argued that this discovery is a predicate for "post-dismissal sanctions proceedings," a "future sanctions motion," and "an affirmative action against HLF." Ex. F, Freeway's Opp. to Mot. to Dismiss at 5, 18; Ex. G, Email Correspondence with Freeway at 21. Freeway's claims of misconduct are baseless for the reasons discussed above. *See supra* I.D. But it is also improper to use discovery in this manner. Freeway cannot conduct a wide-ranging fishing expedition in this case in search of evidence it admits it does not have and that will purportedly be used in other proceedings. *See Diamond Servs.*, 339 F.R.D. at 340 (speculation unsupported by "a modicum of objective support" is an impermissible "fishing expedition"). A Rule 45 subpoena is not an investigative tool for a suspicion untethered to a claim or defense in the case in which it issues. *See Apollo Grp., Inc. v. United States Dep't of Educ. (In re Appollo Grp., Inc.)*, 329 F. App'x 283, 284 (D.C. Cir. 2009).

Courts in this district refuse to allow a party to misuse the discovery process to investigate suspected wrongdoing or to develop claims unrelated to the underlying proceeding. *See, e.g., Jiang v. NVIDIA Corp.*, 2026 WL 962496, at *6 (D.D.C. Apr. 9, 2026) (declining to "sanction[] a

19

fishing expedition for new claims, defenses, or surprise facts") (internal citations and quotations omitted); *Pederson v. Preston*, 250 F.R.D. 61, 65–66 (D.D.C. 2008) ("Courts need not tolerate fishing expeditions . . . in overbroad and far-ranging discovery requests," and discovery "should be tailored to the issues involved in a particular case"); *Edwards v. Gordon & Co.*, 94 F.R.D. 584, 586 (D.D.C. 1982) ("Discovery thus should be confined to developing facts underlying a [party's] claim . . . and not used as a 'fishing expedition' to discover what else may be amiss or to develop wholly new claims unrelated to what is averred in the complaint").

That bar applies with special force here because Freeway readily admits it has no evidence of purported misconduct, just suspicion and the hope that it may discover something to "bolster" its theory in the future. Ex. G, Email Correspondence with Freeway at 18; *see Phillips & Cohen*, 300 F.R.D. at 18 (quashing a subpoena that was "a naked attempt to gather information for use in evaluating, and perhaps litigating, a claim against" the non-party law firm); *Burlodge Ltd. v. Stadex Int'l Corp.*, 257 F.R.D. 12, 16 (D.D.C. 2009) (quashing a subpoena where discovery may not be sought "based on mere suspicion that evidence exists to support the underlying contention"); *Sterne Kessler*, 276 F.R.D. at 384 (condemning use of a subpoena to opposing counsel to pursue unspecified "non-privileged, factual information" as "exactly the type of fishing expedition that courts have attempted to prevent").

### C.     The Requests Seek Privileged Information and are Overbroad, Unduly Burdensome, and Disproportionate to the Needs of the Case

The document requests fail on other grounds as well. For example, Category 2 requests seek information about all individuals who performed forensic analysis of Mr. Wilson's claims and the manner in which they conducted it. How HLF screened, investigated, and evaluated potential claims is, at a minimum, attorney work product, which HLF cannot be compelled to produce. *See United States v. Paxson*, 861 F.2d 730, 736 (D.C. Cir. 1988) (affirming order

quashing subpoena seeking attorney records noting that the standard requires "a far stronger showing of necessity and unavailability" for work product materials) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 402); *In re Mot. to Compel Compliance with Subpoena Directed to Cooke Leg. Grp, PLLC*, 333 F.R.D. 291, 294 (D.D.C. 2019) ("A nonparty responding to a subpoena need not produce documents protected by attorney-client privilege.").

The Category 4 requests are also unduly burdensome and disproportionate to the needs of this case. They abandon any link to Freeway or the underlying action and reach "any TCPA claim asserted by Wilson," "each TCPA claim, demand, lawsuit, or potential lawsuit involving Wilson," and "each letter" HLF sent on Mr. Wilson's behalf. *See* Heidarpour Decl. at ¶ 7. Freeway has represented that these requests seek information on at least 100 other matters. Ex. D, Freeway's Mot. to Den. Class Certification at 1, 13; Ex. F, Freeway's Opp. to Mot. to Dismiss at 1, 4. These sweeping demands are "overbroad on their face and exceed the bounds of fair discovery." *Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d at 60 (quashing subpoena reaching "virtually every document in [the non-party's] possession" across a decade of unrelated litigation); *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017) (requests "overbroad and unduly burdensome" where they swept in years of unrelated material).

## III. THE RULE 30(B)(6) DEPOSITION OF NON-PARTY COUNSEL IS SEPARATELY IMPROPER

Like document requests served on a party's counsel, courts "presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise." *Coleman*, 284 F.R.D. at 18. Such depositions are disfavored and permitted only in the narrowest circumstances, because they threaten privilege and work product, disrupt the adversarial process, and invite abuse. *See Sterne Kessler*, 276 F.R.D. at 380 (even depositions "limited to relevant and non-privileged information" may "disrupt the

21

effective operation of the adversarial system by chilling the free and truthful exchange of information between attorneys and their clients"); *Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, 1999 WL 1815561, at *1-2 (D.D.C. Feb. 2, 1999) (barring deposition of counsel who handled the negotiations at issue); *Wilson v. Scruggs*, 2003 WL 23521358, at *1 (S.D. Miss. Apr. 10, 2003) ("[D]epositions of opposing counsel . . . lower the standards of the profession").

Freeway has not come close to meeting its high burden to justify HLF's deposition. The deposition topics fail for all the same reasons discussed above: they seek information that is available through Mr. Wilson, irrelevant, privileged, and overbroad. *See supra* Section II. The privilege issues raised by the deposition requests are even more severe. For example, the deposition topics seek "the nature and substance" of communications between HLF and Mr. Wilson (Depo Topic 2), and the "nature of the work performed" related to "claim-identification," "intake," or "lead-review" (Depo Topic 7). The substance of communications between HLF and Mr. Wilson is clearly privileged, and the nature of HLF's work investigating Mr. Wilson's potential claims is, at a minimum, attorney work product. *Id.* at ¶ 8.[6]

Courts routinely quash subpoenas for deposition testimony from a party's lawyer in similar circumstances. *See Jiang*, 2026 WL 962496 at *5 (quashing Rule 45 deposition subpoenas served on patent-prosecution counsel and his law firm because the depositions risked disclosure of privileged information and any non-privileged testimony was irrelevant or obtainable from more appropriate sources); *In re Application for an Order Pursuant to 28 U.S.C. § 1782*, No. 17-1477, 2017 WL 3708028, at *4–5 (D.D.C. Aug. 18, 2017) (declining to authorize deposition subpoenas

---

[6]    Earlier today, Freeway represented for the first time that it "does not seek the substance of any communications conveying or asking for legal advice." Ex. G, Email Correspondence with Freeway at 2-3. But HLF continues to have serious concerns that a deposition of an HLF representative on the proposed topics will inevitably call for the disclosure of privileged information or attorney work product.

directed at an adverse party's counsel and his firm in light of the tenuous relevance of the testimony and the substantial privilege and work-product burdens such depositions would impose); *see also Coleman*, 284 F.R.D. at 20 ("[A] deposition [of counsel] carries significant risks of revealing [the attorney's] 'mental impressions,' which are protected work product."); *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340, 344 (W.D.N.Y. 2009) ("[E]ven a [limited] deposition of counsel . . . risks disrupting the attorney-client relationship." (quoting *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002))). Indeed, allowing Freeway to seek discovery from Plaintiff's counsel on these topics would "chill[] the free and truthful exchange of information between attorneys and their clients." *Sterne Kessler*, 276 F.R.D. at 380–81.

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD DEFER RULING UNTIL THE DISTRICT OF OREGON DECIDES THE PENDING MOTIONS

If the Court is not prepared to quash the subpoena at this time, it should defer ruling until after the District of Oregon rules on the pending motions. As explained above, Mr. Wilson has moved to dismiss his own case with prejudice, and Freeway does not oppose that dismissal. Mot. to Dismiss. A Rule 45 subpoena draws its force from the proceeding in which it issues, and the end of that proceeding voids it. If this action is dismissed, the Subpoena serves no purpose and is automatically void. *See In re Appollo Grp*, 329 F. App'x at 284 ("The rule here is simple: a Rule 45 subpoena . . . issues in aid of a trial proceeding . . . and so the termination of that trial proceeding voids the subpoena and moots any ongoing litigation regarding it"). Moreover, if any discovery is warranted, the District of Oregon will likely provide guidance when it decides the pending motions. A stay is entirely appropriate in these circumstances.

23

## V.   HLF IS ENTITLED TO ITS COSTS AND FEES UNDER RULE 45(D)(1)

The Court should award HLF its costs and reasonable fees under Rule 45(d)(1). This sanction is appropriate when the party issuing a subpoena has not taken "reasonable steps to avoid imposing undue burden or expense" on the recipient or has otherwise misused the discovery process and issued the subpoena for an improper purpose. *Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 22–23 (D.D.C. 2015); *see also Saint-Jean v. Emigrant Mortg. Co.*, 2015 WL 13735434, at *6 (E.D.N.Y. Oct. 7, 2015) ("Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash."). Sanctions are likewise warranted where a subpoena is issued "for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). Those circumstances apply here.

*First*, Freeway's unwillingness to stay compliance with the Subpoena until after the Court rules on the pending motions in the underlying action is unreasonable and wastes judicial and party resources. Ex. G, Email Correspondence with Freeway, at 17. The motion to dismiss will inevitably end this case and void the subpoena, and Freeway has stated repeatedly that it does not need discovery for its motion to deny class certification. There is no reason to force HLF to spend time and resources moving to quash the Subpoena, especially after HLF made two productions in good faith to address Freeway's concerns.

*Second*, Freeway is misusing the discovery process to conduct its own purported investigation into HLF. Freeway has threatened HLF with more subpoenas in other cases if it does not get the information it wants in this one. Ex. G, Email Correspondence with Freeway at 21. This is entirely improper and runs roughshod over case law in this District repeatedly rejecting attempts to use discovery in this manner. *See supra* Section II. B.

24

*Finally*, Freeway has continued to make frivolous and unsupported accusations against HLF that are false and damaging to its reputation. Among other things, Freeway has asserted that HLF is involved in "manufacturing" claims, charges excessive fees, and asserts claims in violation of its ethical obligations. Ex. D, Freeway's Mot. to Den. Class Certification at 21–24. There is no evidence supporting any of those accusations, which are baseless. Freeway's willingness to drag HLF through the mud without evidence underscores the inappropriateness of this Subpoena and Freeway's conduct.

In similar circumstances, courts have awarded costs and reasonable fees. *See, e.g.*, *Saint-Jean*, 2015 WL 13735434, at *5–6 (awarding fees where improperly issued subpoenas to opposing counsel "should never have been issued" and the issuing party refused to withdraw them, requiring a motion to quash); *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679–80 (N.D. Okla. 2008) (awarding fees where the issuing party "forced the issue by moving to compel compliance with onerous and burdensome subpoenas," and holding that "good faith in issuing a subpoena is not sufficient to avoid sanctions"); *BMO Harris Bank, N.A. v. Richert Funding, LLC*, 2017 WL 11627485, at *10–14 (N.D. Ga. July 3, 2017) (awarding fees where the issuing party failed to take reasonable steps to avoid undue burden and refused to narrow the subpoena's scope, forcing a motion to compel).

## CONCLUSION

For the foregoing reasons, the Court should stay the Rule 30(b)(6) deposition, quash the Subpoena, and award HLF its costs and fees.

DATED: June 24, 2026

Respectfully submitted,

Neal Katyal (D.C. Bar No. 462071)
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202-835-7500
Facsimile: 202-263-7586

Matthew J. Laroche (pro hac vice forthcoming)
Peter Farag (pro hac vice forthcoming)
Isabelle Laskero (pro hac vice forthcoming)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-530-5000
Facsimile: 212-530-5219
*Attorneys for Non-Party Heidarpour Law Firm, PLLC*

26