**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC. | Case No.: 26-mc-00099-RJL |
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | Underlying action: United States District Court for the District of Oregon, Eugene Division |
| Plaintiff, | Case No. 6:25-cv-01869-MC |
| v. | |
| FREEWAY INSURANCE SERVICES OF AMERICA, LLC, | |
| Defendant. | |

**DEFENDANT'S NOTICE TO COURT REGARDING HLF'S EMERGENCY MOTION TO STAY AND MOTION TO QUASH**

Freeway files this Notice in light of the Court's June 25, 2026, order staying the subpoena and referring HLF's Emergency Motion to Stay and Motion to Quash to Judge Faruqui. Freeway does not ask the Court to revisit the stay, but it does write to correct the record. There was never an emergency, and HLF knew that when it filed.

HLF's emergency request rested on the premise that, absent immediate intervention, it faced a June 26 deposition. That is not true, and the record that HLF omitted to obtain emergency relief proves it. Freeway had previously given HLF an extension to respond to the document requests and had extended HLF's deposition at HLF's request from June 19 to June 26 to give it "breathing room to move to quash." Watstein Decl., Ex. 1 at 11 (June 17, 2026 email). On June 24, Freeway offered to extend the deposition date through July 1 with no conditions at all. *Id.* It also offered to hold the deposition "entirely in abeyance" pending a ruling on the motion to quash, "as a courtesy to avoid 'emergency' briefing," confirming that HLF's mere filing of the motion

1

would "obviate the need for a separate, affirmative motion to stay the deposition."[1] *Id.*, Ex. 1 at 2, 6 (June 24, 2026 emails).

The parties were still conferring over the subpoena's scope the day before the motion to quash was filed, and HLF's lawyers had promised to confer further with their client on several open questions. *Id.*, Ex. 1 at 7 (June 23, 2026 emails). The day the motion to quash was filed, HLF instead suddenly declared a complete impasse and filed an "emergency" motion timed to land right as Freeway's lead counsel began trial—and was unable to respond, a point Freeway communicated to HLF.[2] *Id.*, Ex. 1 at 1–4. Freeway notes this history because it bears on the manner in which this subpoena dispute—which seeks critically important information for several pending motions, aimed at revealing a fraud on the court—has been litigated.

The briefing in the underlying case for which the HLF subpoena was issued, Watstein Decl., Exs. 2 (Freeway's Mot. to Deny Class Certification), 4 (Freeway's Opp'n to Pl.'s Mot. to Dismiss), sets out the full record. Freeway encourages the Court to skim those filings. In the meantime, a few points are worth highlighting, so the Court can understand the context of the HLF subpoena and why it received an "emergency" request from a former acting U.S. Solicitor General to stay a third-party deposition: The underlying action is one of nearly 100 putative TCPA class actions Mr. Wilson has filed in under two years. He and his lawyers style those cases as class actions but settle them all individually, never seeking certification, using the "class action" label

---

[1] The only thing Freeway asked for in exchange for holding the deposition in complete abeyance was a single yes-or-no answer: whether Mr. Wilson, or someone at HLF, signed Wilson's name to the co-counsel engagement agreement HLF produced. And again, Freeway offered to move the deposition back a week to avoid an emergency regardless of whether HLF agreed to that.

[2] Despite Freeway offering to extend the deposition deadline, HLF sent an email two hours before it filed its motion claiming the parties were at an impasse and saying it would file an emergency motion unless Freeway agreed to a permanent stay of the deposition. Watstein Decl., Ex. 1 at 2. HLF then filed the motion before Freeway's lead counsel even had a chance to read the last email because Freeway's lead counsel was in trial preparation, as HLF knew.

to extract better-than-the-statute payments while absent class members recover nothing. *See generally* Watstein Decl., Ex. 2.

HLF is the undisclosed[3] firm that originates, controls, and settles those claims, profiting from each. Watstein Decl., Ex. 3 (Watstein Decl. ISO Mot. to Deny Class Certification) ¶¶ 33–35, 46–51. By the terms of its own engagement agreement with Wilson, HLF holds a "power of attorney" to select, pursue, settle, and deposit money on "any and all" of Mr. Wilson's TCPA class actions, retains a financial interest in each, and imposes such severe penalties for termination that it effectively imposes a perpetual relationship. *See* Watstein Decl., Ex. 5 (Watstein Decl. ISO Response to Pl.'s Mot. for Voluntary Dismissal) ¶ 14.

When Freeway brought this information to the attention of the District of Oregon in the underlying case in a motion to deny class certification, Wilson and his lawyers immediately *moved to dismiss their own case with prejudice*—after saying earlier that day that they were adding claims and defendants. *Id.*, Ex. 3 ¶¶ 55–59. They then dismissed various other Wilson cases across the country, as well as another case in which Freeway's counsel served a subpoena on HLF. *Id.*, Ex. 5 ¶ 5. Both Wilson and HLF have since declined to participate in the discovery aimed at further ferreting out the fraud on the court and abuse of process outlined in Freeway's pending motions. *Id.*, Ex. 5 ¶¶ 13, 18. HLF went a step further: hiring a former acting U.S. Solicitor General and an entire white-collar team to gin up an emergency to further stymie the fact-gathering process (while simultaneously casting itself as a small, solo law firm that would be "burdened" by discovery).

---

[3] By "undisclosed," Freeway means that HLF is routinely not disclosed to the courts as having a financial interest in the class actions it originates—an interest amounting to 30-50% of any settlement or award—often in violation of specific court rules requiring such disclosure. Watstein Decl. ¶ 4; Ex. 5 ¶ 35.

As Freeway will explain in its substantive response to the motion to quash, the information sought from HLF by subpoena and deposition is targeted, limited, and goes to the heart of the pending motions in the underlying case: motions so meritorious that they caused the attempted dismissal of not just that case but several other class actions across the country. It is also relevant to Freeway's anticipated request for fees and sanctions arising from the abuse those motions describe. Watstein Decl., Ex. 4.

Because the Court has referred the motion to quash to Judge Faruqui under Local Civil Rules 72.1(b)(7) and 72.2(a), Freeway respectfully proposes, for Judge Faruqui's consideration, that the motion proceed on an ordinary schedule: Freeway's opposition due July 8, 2026, and HLF's reply due July 15, 2026.[4] LCvR 7(b), (d). Freeway will further address the substance of the subpoena and the motion to quash before Judge Faruqui.

---

[4] HLF have since offered to stipulate to a mutually agreeable briefing schedule since the "emergency" has been resolved. Watstein Decl., Ex. 1 at 1. That misses the point. This motion never was an emergency. But since the motion has been filed, Freeway will respond in due course under the Court's standard briefing schedule.

Dated: June 29, 2026

*/s/ Attison L. Barnes, III*
Attison L. Barnes, III (DC Bar No. 427754)
Cameron B. Wolfe (DC Bar No. 90005487)
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202-719-7000
Fax: 202-719-7049
abarnes@wiley.law
cbwolfe@wiley.law


*/s/ Ryan D. Watstein*
Ryan D. Watstein (*Pro hac vice* forthcoming)
ryan@wtlaw.com
James M. Ruley (*Pro hac vice* forthcoming)
jruley@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Tel: (404) 783-0695

*Attorneys for Defendant*
*Freeway Insurance Services of America, LLC*