**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC | Case No.: 26-mc-00099-RJL-ZMF |
| | **ORAL ARGUMENT REQUESTED** |
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | Underlying action: |
| Plaintiff, | United States District Court for the District of Oregon, Eugene Division |
| v. | Case No. 6:25-cv-01869-MC |
| FREEWAY INSURANCE SERVICES OF AMERICA, LLC, | |
| Defendant. | |

**DEFENDANT'S OPPOSITION TO NON-PARTY HEIDARPOUR LAW FIRM, PLLC'S
EMERGENCY MOTION TO STAY AND QUASH A SUBPOENA**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................ 4

      A.    Faced with a Motion Exposing the Sue-and-Settle Model Underlying
          His Claims, Wilson Moved to Dismiss His Own Case with Prejudice ................. 4

      B.    The Subpoena Is Narrow: It Asks Who Signed What,
          Who Accessed What, and Who Gets Paid What ..................................................... 7

      C.    Freeway Conferred for Weeks; HLF Manufactured an "Emergency"
          on the Eve of Freeway's Lead Counsel's Trial ....................................................... 11

III.  LEGAL STANDARD ..................................................................................... 12

IV.   ARGUMENT ................................................................................................ 14

      A.    The Motion to Quash the Document Requests Fails at Every Step ...................... 14

          1.    HLF Is the Only Source of the Discovery It Resists ................................ 14

          2.    The Discovery Is Relevant Three Times Over ......................................... 16

          3.    The Requests Are Narrow by Design, and
              Nothing They Seek Is Privileged ............................................................. 21

      B.    The Deposition Should Be Deferred, as
          Freeway Proposed—Not Quashed ....................................................................... 26

      C.    HLF's Fee Request Gets the Record Backwards .................................................. 28

V.    CONCLUSION ............................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*Abels v. JBC Legal Grp.,*
  *P.C.*, 233 F.R.D. 645 (N.D. Cal. 2006) ................................................................................. 18

*Alexander v. FBI,*
  186 F.R.D. 113 (D.D.C. 1998) ............................................................................................. 27

*In re Apollo Grp., Inc. Sec. Litig.,*
  329 F. App'x 283 (D.C. Cir. 2009) ...................................................................................... 21

*BMO Harris Bank, N.A. v. Richert Funding, LLC,*
  2017 WL 11627485 (N.D. Ga. 2017) ................................................................................... 29

*Brinton v. Dep't of State,*
  636 F.2d 600 (D.C. Cir. 1980) ............................................................................................. 24

*Bronstin v. S. Cal. Edison Co.,*
  No. 8:25-cv-2334 (C.D. Cal.) ............................................................................................... 20

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ............................................................................................................... 30

*Chaudhry v. Gallerizzo,*
  174 F.3d 394 (4th Cir. 1999) ............................................................................................... 24

*Coleman v. Dist. of Columbia,*
  284 F.R.D. 16 (D.D.C. 2012) ................................................................................... 15, 26, 28

*Cooter & Gell v. Hartmarx Corp.,*
  496 U.S. 384 (1990) ............................................................................................................. 17

*Corp. for Pub. Broad., Educ. Broad. Co. v. Am. Auto. Centennial Comm'n,*
  1999 WL 1815561 (D.D.C. 1999) ........................................................................................ 27

*Dell Inc. v. DeCosta,*
  233 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................. 13, 22, 28

*\*Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP,*
  339 F.R.D. 334 (D.D.C. 2021) ...................................................................................... 15, 19

*Edwards v. Gordon & Co.,*
  94 F.R.D. 584 (D.D.C. 1982) ............................................................................................... 22

*Evans v. Atwood,*
  177 F.R.D. 1 (D.D.C. 1997) ................................................................................................. 24

*First Fed. Sav. & Loan Ass'n of Walla Walla v. C.P.R. Constr., Inc.*,
  689 P.2d 981 (Or. Ct. App. 1984) ................................................................. 18

*Flanagan v. Wyndham Int'l, Inc.*,
  231 F.R.D. 98 (D.D.C. 2005) ........................................................................ 26

*Founding Church of Scientology of Wash., D.C., Inc. v. Webster*,
  802 F.2d 1448 (D.C. Cir. 1986)..................................................................... 26

*Fudali v. Pivotal Corp.*,
  2010 WL 4910263 (D.D.C. Dec. 2, 2010) .................................................... 24

*GFL Advantage Fund, Ltd. v. Colkitt*,
  216 F.R.D. 189 (D.D.C. 2003) ................................................................ 23, 24

*Goldberg v. Amgen, Inc.*,
  123 F. Supp. 3d 9 (D.D.C. 2015)................................................................... 29

*Huntair, Inc. v. Climatecraft, Inc.*,
  254 F.R.D. 677 (N.D. Okla. 2008) ............................................................... 29

*In re an Order Pursuant to 28 U.S.C. § 1782*,
  2017 WL 3708028 (D.D.C. 2017)................................................................. 27

*In re Mot. to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*,
  333 F.R.D. 291 (D.D.C. 2019) ................................................................ 23, 25

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
  659 F. Supp. 3d 54 (D.D.C. 2023)..................................................... 12, 13, 22

*In re Subpoena to Goldberg*,
  693 F. Supp. 2d 81 (D.D.C. 2010)................................................................ 16

*Jacobsen v. Oliver*,
  555 F. Supp. 2d 72 (D.D.C. 2008)................................................................ 18

*Jiang v. NVIDIA Corp.*,
  2026 WL 962496 (D.D.C. Apr. 9, 2026)................................................ passim

*Kotlarsz v. Platinum Choice Healthcare LLC*,
  No. 9:24-cv-80835 (S.D. Fla. July 9, 2024) .................................................. 5

*Lyman v. Quinstreet*,
  No. 23-5056, (N.D. Cal. Oct. 3, 2023) .......................................................... 5

*Mannina v. District of Columbia*,
  334 F.R.D. 336 (D.D.C. 2020) ..................................................................... 28

iii

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................ 16

*Saint-Jean v. Emigrant Mortg. Co.*,
    2015 WL 13735434 (E.D.N.Y. 2015) ..................................................................... 29

*Shelton v. Am. Motors Corp.*,
    805 F.2d 1323 (8th Cir. 1986) ............................................................................... 28

*Shvartser v. Lekser*,
    292 F. Supp. 3d 272 (D.D.C. 2018) ....................................................................... 28

*\*Slevin v. AB Hollywood, LLC*,
    --- F. Supp. 3d ----, 2026 WL 892186 (D. Or. Mar. 31, 2026) ................................ 12, 17, 18, 20

*Sourgoutsis v. U.S. Capitol Police*,
    323 F.R.D. 100 (D.D.C. 2017) ............................................................................... 12, 13, 16

*Stanich v. Travelers Indem. Co.*,
    259 F.R.D. 294 (N.D. Ohio 2009) .......................................................................... 18

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
    276 F.R.D. 376 (D.D.C. 2011) ............................................................................... 27

*Tax Analysts v. Internal Rev. Serv.*,
    117 F.3d 607 (D.C. Cir. 1997) ............................................................................... 24

*United States v. Naegele*,
    468 F. Supp. 2d 165 (D.D.C. 2007) ........................................................................ 24

*United States v. Newman*,
    531 F. Supp. 3d 181 (D.D.C. 2021) ........................................................................ 23

*United States v. Paxson*,
    861 F.2d 730 (D.C. Cir. 1988) ............................................................................... 25

*Wilson v. Kaiser Found. Health Plan, Inc.*,
    No. 3:25-cv-802-RS (N.D. Cal. Mar. 31, 2025) ....................................................... 6

*Wilson v. Scruggs*,
    2003 WL 23521358 (S.D. Miss. 2003) ................................................................... 27

*Wilson v. Skopos Fin., LLC*,
    No. 6:25-cv-00376-MC (D. Or.) ............................................................................. 3

**Statutes**

28 U.S.C. § 1927 .................................................................................................... 17

**Rules**

Fed. R. Civ. P. 11 ................................................................................................................... 17

Fed. R. Civ. P. 23 ................................................................................................................... 16

Fed. R. Civ. P. 26 .............................................................................................................. 13, 25

Fed. R. Civ. P. 30 ................................................................................................................... 26

Fed. R. Civ. P. 41 ................................................................................................................... 17

Fed. R. Civ. P. 45 ............................................................................................................. passim

## I.    INTRODUCTION

The Heidarpour Law Firm ("HLF") tells the Court (at 5–6) that it is "a small law firm" with "no role" in the conduct at issue and no stake in the litigation underlying this subpoena. Just like the alleged emergency basis for its motion, that is not true.

To start, HLF's own pleading concedes (at 12) that it has a 30% financial interest in the underlying litigation filed in the name of Chet Wilson. But HLF also holds a perpetual stake in all Wilson's other 100+ claims, along with a blanket power of attorney to pick which claims to file, prosecute them, and "execute all claims, contracts, settlements, checks, drafts, compromises, covenants, releases, verifications, dismissals and deposits" on "any and all" of Chet Wilson's TCPA claims. ECF No. 4-5 ¶ 14; Watstein Decl. Ex. 1 (2024 Contingent Fee Agreement).

Under this relationship, HLF has caused nearly 100 cases labeled as "class actions" to be filed in Wilson's name in under two years. But none has secured recovery for a class or even sought certification. ECF No. 4-3 ¶¶ 5–7; ECF No. 4-5 ¶ 5. That pattern is not incidental to this dispute—it is the dispute. Freeway intends to show that Wilson and his lawyers weaponize Rule 23 itself, styling small-dollar individual claims as class actions to extract settlements far above the maximum permissible statutory damages—most of which line the pockets of HLF and the rotating cast of co-counsel—while the class members get nothing. ECF No. 4-2 at 21, 23. HLF sits at the center of that operation, holding a substantial stake in the proceeds of lawsuits in which it does not appear or even disclose its interest, often in violation of court rules. ECF No. 4-3 ¶ 35.

Now this "small firm" has retained the former Acting Solicitor General of the United States at more than $3,000 an hour to avoid producing a handful of non-privileged documents it already produced in other cases. Why go to such lengths? The answer is simple: HLF is the originating principal of the sue-and-settle mill that Freeway's motion exposed for the first time, and the subpoena asks for the documents revealing its machinations.

Here is how the dispute arrived at this Court. On May 16, Freeway moved in the District of Oregon to deny class certification, laying out the scheme in detail. *See generally* ECF No. 4-2. Alongside that motion, Freeway served discovery—on Wilson, and by this subpoena, on HLF—aimed at two questions: whether Wilson's claims are genuine or manufactured, and whether Wilson and his counsel can adequately represent a class. Wilson's response was to move to dismiss his own case. With prejudice.

A plaintiff does not extinguish his own claims for good because he has nothing to hide. And the Oregon court has not let him off the hook: rather than dismissing the case, Chief Judge McShane ordered Wilson to respond to Freeway's certification motion. Watstein Decl. Ex. 2. The serious questions raised in that motion are Chief Judge McShane's to decide, and he is deciding them now. What this Court controls is the record on which he decides them. This Court should not have him do so with a blindfold on. It should deny HLF's motion and decline to let it off the hook.

HLF has not met its heavy burden, nor could it. The subpoena is proper and narrow. Across twelve requests, each confined to "documents sufficient to identify" discrete facts, it asks three questions: who signed what, who accessed what, and who gets paid what. Watstein Decl. Ex. 3. Each question rests on evidence, not conjecture. And the answers bear on everything still live in Oregon: whether Wilson and his counsel can adequately represent a class (a requirement that exists to protect absent class members, not defendants), how the sue-and-settle model operates, and why sanctions are warranted—even if the case is dismissed.

Freeway has reason to believe Wilson did not even sign the co-counsel agreement HLF itself produced. In fact, Freeway asked HLF that question directly, and HLF refused to answer it, filing this "emergency" motion instead. ECF No. 4-1 at 3. Wilson has testified, under oath, that law-firm personnel held his iCloud credentials and spent years mining his accounts for claims.

2

Wilson Dep. at 68:16–69:16, 80:19–20, *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC (D. Or.), Watstein Decl. Ex. 4. And HLF's agreements across Wilson's nearly 100 other cases will show who actually controls the cases filed in his name—the precise inquiry that Rule 23(a)(4)'s adequacy requirement demands.

HLF has already produced the requested documents in at least one other action. The objections it raises now to avoid Chief Judge McShane's consideration of them do not survive any level of scrutiny. First, HLF says the subpoena burdens an uninvolved third party. Not so. HLF holds power of attorney over every claim at issue, a conceded 30% stake in this case, and is the only reliable source of most of what the subpoena seeks. Freeway went to the party first, and Wilson refused to answer anything about HLF. And given the blanket power of attorney, Wilson cannot, by definition, know what HLF has done in his name. Only HLF can answer that.

Second, HLF says the discovery is irrelevant. It is relevant three times over: the certification motion is being briefed before Chief Judge McShane on his order, the terms of Wilson's contested dismissal are undecided, and the sanctions record survives dismissal in any event. HLF's recurring theory—that dismissal will soon moot everything—is not a defense of Wilson's case, and it is a path Chief Judge McShane's briefing order already foreclosed.

Third, HLF says the requests are disproportionate. But each simply asks for "documents sufficient to identify" discrete facts—the narrowest formulation there is—and Freeway has narrowed them further still during conferral. Fourth, HLF says the subpoena invades privilege. It does not: Freeway disclaimed, in writing, any request for the substance of legal advice, as HLF acknowledges (at 22 n.6). In any event, the information sought is factual, not legal advice, and the cases HLF cites shielding trial counsel's litigation files do not protect an originating firm's financial records. That is fatal here because HLF concedes (at 5) it is not counsel of record in the

3

Wilson case. It is, effectively, a lead generator, not even acting as legal counsel. Even Wilson posted on social media that his primary contact at HLF is female, but there are no female lawyers at HLF. His primary contact, in other words, was a non-lawyer.

Finally, the Court should reject HLF's request for fees and, if anything, award Freeway its fees. Freeway conferred for weeks and extended every deadline HLF requested. HLF answered by declaring an impasse and filing this "emergency" motion two hours later to secure the stay that will likely place Freeway's subpoena on ice until after the relevant motions are resolved in Oregon, effectively precluding Chief Judge McShane from deciding them on a full record. ECF No. 4-1 at 2. That is not good-faith conferral; it is gamesmanship.

The Court should deny the motion to quash in its entirety.

## II.    BACKGROUND

### A.    Faced with a Motion Exposing the Sue-and-Settle Model Underlying His Claims, Wilson Moved to Dismiss His Own Case with Prejudice

Wilson filed a "class action" against Freeway in October 2025, in the District of Oregon, alleging that Freeway sent three marketing text messages in June 2024 to a cellular number registered on the National Do-Not-Call Registry. Watstein Decl. Ex. 5 (Compl.). It is the latest of nearly 100 putative TCPA class actions Wilson has filed in less than two years—an operation he has described as "a line of steady income." ECF No. 4-2 at 1; Watstein Decl. Ex. 6. He has settled or dismissed more than half of those cases individually. ECF No. 4-3 ¶ 6; ECF No. 4-5 ¶ 5; Watstein Decl. ¶ 4 & Ex. 6. He has never obtained a contested certification. ECF No. 4-3 ¶ 7. And he has never recovered anything for a class. *Id.*

On May 16, Freeway moved to deny class certification. *See generally* ECF No. 4-2. The motion details how Freeway understands Wilson and his lawyers weaponize Rule 23, labeling small-dollar individual cases as "class actions," recycling class discovery to ratchet settlement

4

pressure, and using the in terrorem effect of the class device to extract "better than the statute" individual settlements from TCPA-compliant businesses—pocketing millions while absent class members recover nothing. *Id.* at 1–2. The motion presents numerous independently dispositive grounds for denying certification now. Chief among them is that Wilson is wildly inadequate under Rule 23(a)(4)—both because of his systematic abuse of the class mechanism and because of his frequent, violent, public hate speech directed at members of the very classes he purports to represent. *Id.* at 21–24. "I got holes f***ing dug already, motherf***ers," Wilson announced publicly, describing what he intends to do to the "Bolshevik f***ing jews" he calls "f***ing parasites that have taken over this world." *Id.* at 2. In between filing class actions, he bragged— repeatedly—about being kicked off "f*ggbook" for hate speech. *Id.* And that's just the tip of the iceberg. As Freeway's motion asks: could someone who has "holes dug" for Jewish and LGBTQ+ class members "fairly and adequately protect the[ir] interests"? *Id.*

Central to that motion is HLF, the undisclosed firm that controls all of Wilson's claims by contract, refers them to a rotating cast of litigation counsel, and profits from each. *Id.* at 10; ECF No. 4-3 ¶ 33. Under a "Contingent Fee Agreement" granting it blanket power of attorney, HLF holds the right to select, pursue, settle, and deposit the proceeds of "any and all" of Wilson's TCPA claims—with termination penalties severe enough to make the relationship effectively permanent. ECF No. 4-5 ¶ 14; Watstein Decl. Ex. 1. And HLF routinely fails to disclose that interest—30 to 50% of any recovery—to the courts hosting the cases it originates, including when local rules require such disclosure. ECF No. 4-3 ¶ 35; *see also, e.g.*, *Kotlarsz v. Platinum Choice Healthcare LLC*, No. 9:24-cv-80835 (S.D. Fla. July 9, 2024), Dkt. No. 4 (failing to disclose Heidarpour as an interested party); *Lyman v. Quinstreet*, No. 23-5056 (N.D. Cal. Oct. 3, 2023), Dkt. No. 3 (same);

*Wilson v. Kaiser Found. Health Plan, Inc.*, No. 3:25-cv-802-RS (N.D. Cal. Mar. 31, 2025), ECF No. 9 (same).

Alongside its motion, Freeway served discovery aimed at two questions: whether Wilson's claims (in the underlying case or his nearly 100 others) are genuine or manufactured, and whether Wilson and his counsel can adequately represent a class. Freeway sought to depose Wilson; inspect the devices he used during the two-week window surrounding the contact-form submission at issue; review his iCloud access history and his agreements with HLF; and obtain non-content records from Apple bearing on account access, and records from HLF showing how his claims are identified, referred, and monetized. ECF No. 4-4 at 12. And the certification motion announced this subpoena on its face: "[a]dditional third-party subpoenas to the Heidarpour Law Firm (for records relating to how it originated and referred this claim and others) are forthcoming." ECF No. 4-2 at 26.

Wilson's response was not to defend his adequacy or rebut the evidence. It was to run. On the day the parties conferred about Freeway's forthcoming certification motion, Wilson's counsel represented that he would be filing an amended complaint that very day—expanding the case, not ending it. ECF No. 4-3 ¶ 56. The motion arrived, but the amended complaint never did. Instead, on June 1, 2026, Wilson moved to dismiss his own case—with prejudice—and asked the Oregon court to stay all discovery until that motion was decided—a request the Oregon court has not granted. ECF No. 4-5 ¶ 4; Watstein Decl. Ex. 7. And the pattern extends beyond this case: since Freeway filed its certification motion, Wilson has dismissed or settled eight other cases, including outright dismissing cases in which he recently contested dispositive motions. ECF No. 4-5 ¶ 5; Watstein Decl. ¶ 5.

Freeway opposed the dismissal motion, asking the Oregon court to resolve the certification motion first, permit completion of the outstanding discovery, and condition any dismissal on appropriate terms. *See generally* ECF No. 4-4. It separately moved to extend the discovery period by sixty days following a ruling. Watstein Decl. Ex. 8. The Oregon court's response answers HLF's mootness theory head on: rather than dismissing the case, Chief Judge McShane ordered Wilson to respond to Freeway's certification motion. Watstein Decl. Ex. 2. A court preparing to let a plaintiff walk away does not order the certification record completed. The Wilson case is moving forward, despite Wilson and his counsel's efforts to avoid accountability.

**B.      The Subpoena Is Narrow: It Asks Who Signed What, Who Accessed What, and Who Gets Paid What**

Freeway served the subpoena on May 20, 2026. Watstein Decl. Ex. 3. It contains twelve document requests and a notice of deposition with nine topics that largely mirror them. *Id.* Every document request is drafted in the narrowest recognized form: each asks for "documents sufficient to identify" a discrete fact—not "all documents concerning" anything. *Id.* The requests fall into four categories, and each is aimed at the same two questions the Oregon discovery asked from the start: whether Wilson's claims are genuine or manufactured, and whether Wilson and his counsel can adequately represent a class.

*Origination (Requests 1–3, 8).* These ask for documents sufficient to identify when HLF first became aware of Freeway's messages to Wilson's number, when it first communicated with Wilson concerning Freeway, and when it first referred any potential Wilson claim against Freeway to other counsel. *Id.* Dates and identities. They test whether this claim originated with the client or with the firm. During conferral, Freeway in good faith narrowed further still: the subpoena no longer seeks additional documents on Requests 1, 2, and 8, as HLF acknowledges (at 6 n.2).

*Technical and forensic access (Requests 4–7).* These ask for documents sufficient to identify each person who accessed any iCloud, Apple, email, cloud-storage, or device account associated with Wilson or his number; the date, time, IP address, and method of each access; the credentials used; and each person who performed "technical, forensic, data-mining, claim-identification, message-monitoring, intake, or lead-review work" concerning Wilson. Watstein Decl. Ex. 3. These requests come straight from Wilson's own sworn testimony. Wilson admitted in another case that he gave "the tech guys at one of [his] law firms" his iCloud credentials so they could go "back five years" through everything he had "gathered" and "find every lawsuit [he] could bring under TCPA." Watstein Decl. Ex. 4 (Wilson Dep.) at 68:16–69:16. And by his own account, Wilson is "absolutely the least technical [sic] savvy person you'll ever meet." *Id.* at 80:19–20. So the five-year forensic review of his accounts was not his work. It was the work of law-firm personnel armed with a power of attorney and his credentials. Requests 4–7 ask HLF to identify those people and document their access—information that bears directly on whether Wilson's claims are genuine.

*Financial interest (Request 9).* This asks for documents sufficient to identify any agreement, referral arrangement, fee-sharing arrangement, co-counsel arrangement, or other financial interest HLF holds in any Wilson claim against Freeway. Watstein Decl. Ex. 3. HLF's interest is not hypothetical: by its own admission (at 12), it takes 30% of whatever is awarded in this case. But the engagement letter is one document in a larger financial architecture—and HLF's 14 pages of "productions" to date have been cherry-picked, produced piecemeal and on its own terms, making it impossible to know what the full record is. Watstein Decl. ¶¶ 6–7 & Ex. 1. Even the two agreements HLF produced are not complete. The 2024 agreement comes with a full SignNow verification log—sender, signer, and a timestamped record of every step from upload to

signature. *Id.*, Ex. 1. The 2025 agreement, the one HLF and Wilson say is specific to this case, was routed through DocuSign—its envelope number shows that much—yet HLF produced no comparable verification for it—no certificate of completion, no audit trail, nothing showing who signed or when. *Id.*, Ex. 9. And the document's face deepens the anomaly: the signature indicators DocuSign itself generates appear only for the attorneys—Wilson's purported signature sits as a standalone mark above his printed name. *Id.* at 3. That absence is not a neutral omission. Wilson is an Oregon plaintiff who has purportedly executed engagement agreements for nearly 100 cases filed across the country, and remote electronic execution—with the audit trail it generates—is exactly how this relationship worked the year before, as the 2024 agreement's own SignNow log shows. *Id.*, Ex. 1 at 3. If Wilson signed the 2025 agreement—instead of HLF executing it on his behalf using its power of attorney—a record of that execution should exist. It sits, if anywhere, in exactly one place: HLF's files.

What remains undocumented is the rest of it: the fee-sharing and co-counsel arrangements with the litigation counsel who front Wilson's cases, any amendments or successor agreements, and any other understanding that gives HLF a stake in the outcome. Who gets paid what, under which agreement, signed by whom—that is the conflict-of-interest evidence Rule 23(a)(4) demands be disclosed, and it exists nowhere else.

*The scheme (Requests 10–12).* These ask for documents sufficient to identify HLF's financial interest in Wilson's other TCPA claims, each Wilson claim it has referred to counsel since January 1, 2023, and each demand letter it has sent on Wilson's behalf over the same period. Watstein Decl. Ex. 3. All of this is relevant to Wilson and his counsel's adequacy to represent putative classes across nearly 100 cases. The responsive documents are concrete: the referral and co-counsel agreements, the demand letters, and the settlements themselves, together with the

9

settlement statements HLF appends to them—documents showing exactly how the proceeds of each case are divided between Wilson and his lawyers. Freeway expects those records to show what the pattern already suggests: that Wilson's lawyers have recovered millions across his settlements, that Wilson himself has recovered comparatively little, and that no class has recovered anything. ECF No. 4-3 ¶¶ 11–13. In other words, an abuse of the class mechanism that cheapens its legitimacy in cases where it is needed to protect seriously injured persons from corporate overreach. Freeway also expects them to show Wilson releasing his own counsel from claims arising out of this very arrangement—releases Freeway has reason to believe HLF executed under its power of attorney rather than Wilson signing himself. Watstein Decl. ¶ 9.

That evidence goes to more than money. It shows whether HLF and the rotating counsel it retains are using the class device for their own benefit, with no genuine intent to ever certify a class—using the machinery of the courts to extract higher-than-statutorily-permissible settlements rather than to litigate the claims they file. And it goes to whether any of Wilson's claims, in this case or others, were manufactured rather than genuine. A manufactured claim anywhere in Wilson's portfolio bears on his adequacy here, on the sanctions record, and on why he is trying to dismiss this case and avoid further discovery now. Wilson's other engagement agreements also supply the baseline: how those agreements were executed—on what platform, with what verification—will show whether the 2025 Freeway agreement is the outlier it appears to be. How many claims, referred to whom, on what financial terms is the adequacy and sanctions record.

What the subpoena does not seek is the substance of any communication conveying or requesting legal advice. Freeway disclaimed that in writing during conferral, and HLF's own motion acknowledges that (at 22 n.6).

10

**C.**    **Freeway Conferred for Weeks; HLF Manufactured an "Emergency" on the Eve of Freeway's Lead Counsel's Trial**

Freeway did not doggedly race to enforce this subpoena. It extended HLF's deadline to respond to the document requests. ECF No. 4-1 at 12. It moved the deposition from June 19 to June 26 at HLF's request to give HLF "breathing room to move to quash." *Id.* It did that in response to HLF's lawyers' requests that they not be required to work over the weekend on a motion. *Id.* And the parties were conferring as late as June 23, when HLF's lawyers promised to consult with their client on several open questions. *Id.* at 8. On June 24, Freeway went further still: it offered to extend the compliance deadline to July 1 with no conditions at all and separately offered to hold the deposition "entirely in abeyance" pending a ruling on any motion to quash—asking in exchange only a single yes-or-no answer: whether Wilson, or someone at HLF, signed Wilson's name to the co-counsel engagement agreement HLF produced. *Id.* at 7. HLF would not answer.

The same day, HLF declared a complete impasse by email—and two hours later filed this "emergency" motion to stay a deposition Freeway had already offered to pause. It filed on the day Freeway's lead counsel began trial, as HLF knew. *Id.* at 2. There was never an emergency.

As HLF's counsel knew it would on a one-sided record created when Freeway's counsel was in trial, this Court stayed the deposition the next day, pending resolution of HLF's motion. Minute Order (June 25, 2026). Almost immediately thereafter, Freeway filed a Notice correcting HLF's account of the conferral record. ECF No. 3.

HLF's production tells the same story of gamesmanship. It produced Wilson's engagement letters when it believed they helped it—but produced them redacted, relenting only after Freeway pressed. ECF No. 4-1 at 11–24. And it stamped the documents "highly confidential" even though no protective order in the underlying case permits that designation. ECF No. 4-5 ¶ 15. HLF produced what helped it, withheld what did not, and gave ground only when pressed. And what it

did produce confirms why the discovery requests are warranted—there is fire behind the smoke identified in Freeway's motion. To take one example: the agreement HLF produced grants it advance blanket settlement authority over Wilson's claims, and a court in the underlying district held just months ago that an agreement giving counsel "advanced blanket authority to litigate and, most importantly, settle claims without consulting plaintiff . . . violates the Oregon Rules of Professional Conduct." *Slevin v. AB Hollywood, LLC*, --- F. Supp. 3d ----, 2026 WL 892186, at *12 (D. Or. Mar. 31, 2026).

HLF's position is a departure from its prior practice. In response to materially similar subpoenas served in other actions arising from the same enterprise, HLF—represented by different counsel—produced the very categories of documents it now calls irrelevant and privileged: engagement letters, demand letters, and settlement documentation, without moving to quash. Watstein Decl. ¶ 8. What changed is not HLF's view of these documents or their contents. It is that, in those other actions, there was not a motion like Freeway's pending that threatened to expose an abuse of the federal court system that delegitimizes the claims of harmed consumers who need class actions to vindicate their rights. Here, there is. The objections in this motion are thus not principled; they are opportunistic attempts to make Chief Judge McShane's job more difficult.

## III.   LEGAL STANDARD

HLF's burden is a heavy one. "[T]he quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Sourgoutsis v. U.S. Capitol Police*, 323 F.R.D. 100, 105 (D.D.C. 2017) (quotation omitted). As the "party resisting discovery," HLF must show that the requests are "unduly burdensome"—with evidence, not adjectives. *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) (quotation omitted). And Rule 45 offers HLF no all-or-nothing exit: on a proper showing, the Court "must quash *or modify*" a subpoena, Fed. R. Civ. P. 45(d)(3)(A) (emphasis added), which is why

a "movant's burden is greater for a motion to quash than if [the movant] were seeking more limited protection." *Sourgoutsis*, 323 F.R.D. at 105. HLF asks only for the extraordinary remedy.

The substantive limits come from Rule 26: a subpoena may seek any non-privileged matter relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Sourgoutsis*, 323 F.R.D. at 105. In assessing undue burden, "courts must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it," *Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d at 58 (quoting *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017)), asking whether the discovery is cumulative, whether a more convenient source exists, and whether the requests are proportional to the needs of the case, *id.* at 59. Every one of those questions is factual. And each runs against HLF here: the discovery duplicates nothing, because Wilson cannot definitively answer it given the power of attorney; no more convenient source exists, because only HLF can say what its files hold; and requests confined to documents "sufficient to identify" discrete facts are proportional by design.

One more principle frames the Court's review. This subpoena serves a case pending in the District of Oregon, and a compliance court "generally has limited exposure to and understanding of the primary action[] and should be wary of unduly restricting the scope of discovery." *Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d at 59 (quoting *Darling v. Girard*, No. 15-mc-499, 2015 WL 13898434, at *5 (D.D.C. July 20, 2015)). That caution carries special force here, because the primary court is not idle: Chief Judge McShane ordered the parties to fully brief the certification motion. Watstein Decl. Ex. 2. He did that notwithstanding Wilson's request to dismiss his own case with prejudice. *Id*. Quashing this subpoena would not spare an uninvolved third party. It would withhold from a sister court evidence bearing on the very motions it plans to resolve.

13

## IV.    ARGUMENT

### A.    The Motion to Quash the Document Requests Fails at Every Step

#### 1.    HLF Is the Only Source of the Discovery It Resists

HLF is the only reliable source of what this subpoena seeks. Under the power of attorney, HLF selects Wilson's claims, refers them, settles them, executes the releases, and deposits the proceeds—all in Wilson's name, none of it requiring Wilson's knowledge. Watstein Decl. Ex. 1. Freeway went to Wilson first for the records of that enterprise, as HLF acknowledges (at 16). Wilson refused—he refused the device inspection, and he refused to answer any question about HLF. ECF No. 4-5 ¶¶ 19–20; ECF No. 4-4 at 12–13. And what Wilson would not provide, he largely could not: he testified that he handed law-firm personnel his iCloud because he needed "somebody to help [him] go through it all," and he could not say who HLF referred his claims to, on what terms, or who accessed his accounts on HLF's behalf. Watstein Decl. Ex. 4, Wilson Dep. 69:5–12. That leaves HLF. The records of who signed what, who accessed what, and who was paid what may sit in its files, or they may not—no one outside the firm can say. That is the consequence of a categorical power of attorney: when a firm holds blanket authority to act in its client's name, only the firm knows what it has done with that authority. What HLF did with Wilson's claims—and for whose benefit—is knowable only from HLF.

HLF's own lead case proves the point. In *Jiang v. NVIDIA Corp.*, the court did not quash the document subpoenas served on a law firm—it enforced them. The firm was ordered to produce "any non-privileged documents" responsive to the requests within fourteen days, and to serve a privilege log for anything withheld. 2026 WL 962496, at *8 (D.D.C. Apr. 9, 2026). Producing a "relatively limited swath of non-privileged documents," the court explained, "is not undue"—even for a law firm. *Id.* at *4 n.4. What *Jiang* quashed was the deposition. And even there, the court charted the sequence Freeway proposes here: documents first, because production gives the

requesting party "a far more credible hook for seeking follow-up discovery through a targeted deposition." *Id.* at \*7. HLF cites *Jiang* for its fishing language (at 19–20). It does not mention the order.

*Diamond Services* helps HLF even less. There, two law firms were subpoenaed based on the suspicion that they had filed anonymous patent challenges on behalf of undisclosed clients who might—or might not—have been the defendants in the underlying case. This Court quashed for two reasons. First, the theory was speculation: the "entire premise rest[ed] upon nothing more" than inference, without "a modicum of objective support." *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 340–41 (D.D.C. 2021). Second, less burdensome alternatives existed: the underlying defendant had answered jurisdictional discovery and denied any link to the firms, and the defendants' own outside counsel—firms with a known connection to the parties—were the proper subpoena targets. *Id.* at 339–40. Every feature of that holding points the other way here. The relationship between HLF and Wilson is not suspected; it is documented in agreements HLF itself produced. Watstein Decl. Exs. 1, 9. The party route is closed because Wilson refused it and, more importantly, could not answer the relevant questions given HLF's power of attorney. And the known-connection counsel that *Diamond Services* identified as the correct subpoena target is exactly what HLF is. *Diamond Services* therefore confirms that the subpoena should be enforced.

HLF's remaining alternative-source cases share the same premise absent in this case: there is somewhere else to go. *Coleman* precluded a deposition of opposing trial counsel because a fact witness with direct knowledge was available and had not yet been compelled—and even then, the court permitted five interrogatories to counsel, because there was no other way to obtain that information. *Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 19–21 (D.D.C. 2012). *Sourgoutsis*

found third-party requests cumulative because the defendant had already produced the same documents. 323 F.R.D. at 112–13. And *In re Subpoena to Goldberg* protected a journalist—a witness shielded by a qualified First Amendment privilege—because the movants had not first exhausted the plaintiff's own published writings and former colleagues. 693 F. Supp. 2d 81, 88 (D.D.C. 2010). Here, nothing has been produced by Wilson, no privilege of that kind exists, Freeway has exhausted all other avenues, and there is nowhere else to go. HLF's fallback—that Freeway's remedy is a motion to compel Wilson, not a subpoena to his lawyer (at 16)—assumes the relevant information can be compelled from Wilson. It cannot be. A motion to compel reaches only what a party possesses, and Wilson testified he has neither: not the records, not the names, not the terms. The alternative-source doctrine asks where the answers live. They live at HLF.

## 2.    The Discovery Is Relevant Three Times Over

The discovery is relevant three times over, and each purpose independently sustains the subpoena. First, class certification. Chief Judge McShane has ordered Freeway's certification motion fully briefed and has stated he will decide it. Watstein Decl. Ex. 2. Adequacy under Rule 23(a)(4) turns on conflicts between the class and its would-be representative—and the counsel who control him. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009). That inquiry exists to protect absent class members from precisely what this record suggests: use of the class device as a settlement-extraction tool for the benefit of counsel. The subpoenaed records are the conflict evidence. HLF produced two fee agreements purporting to govern its relationship with Wilson. Watstein Decl. ¶¶ 10, 18 & Exs. 1, 9. Freeway has no way of telling whether those two are the only ones. *Id.* ¶ 6. And their terms are extraordinary: the first grants HLF blanket advance authority over "any and all" of Wilson's TCPA claims and a 30-to-50% interest in the recoveries. *Id.* Ex. 1. And even those two are incomplete on their face: the 2024 agreement comes with a full SignNow verification log, while the 2025 agreement—the one that purportedly governs this case—

16

carries only a bare DocuSign envelope number, with no record that Wilson opened, viewed, or signed anything. *See supra* Section II.B.

A court in the underlying district has held that an agreement giving counsel this exact authority "violates the Oregon Rules of Professional Conduct." *Slevin*, 2026 WL 892186, at *12. The stakes of that arrangement are not abstract. Based on more than a decade defending TCPA class actions, Freeway's counsel knows that plaintiff's counsel typically takes the vast majority of any individual settlement—often more than 90%, sometimes more than 99%—leaving nothing for any class member. ECF No. 4-3 ¶ 12. Who signed those agreements, who else holds an interest in Wilson's claims, and who was paid what across his other cases goes to the heart of whether Wilson—or anyone directing him—can serve as class representative or counsel.

Second, the terms of dismissal. Wilson's Rule 41(a)(2) motion is contested, and Freeway has asked the Oregon court to condition any dismissal on completion of the served discovery. ECF No. 4-4 at 15–16. Third, sanctions. A federal court retains jurisdiction to impose sanctions "after the principal suit has been terminated." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990). At a minimum, HLF has referred "class action" claims so lacking in merit that litigation counsel was forced to abandon them—conduct that alone implicates Rule 11, 28 U.S.C. § 1927, and the Oregon Rules of Professional Conduct. ECF No. 4-2 at 22–23. And on that score, this discovery has already proven its worth: the little of it obtained to date exposed an arrangement that a court in the underlying district held violates the Oregon Rules of Professional Conduct. *Slevin*, 2026 WL 892186, at *12. Whatever happens to Wilson's claims, the question of how they were made must be answered in Oregon, and this Court should not impede that.

HLF's fee-agreement cases do not hold otherwise. *Abels* denied fee-agreement discovery because the defendant's theory rested on hearsay about a different plaintiff's unseen agreement in

an unrelated case—an "unsubstantiated belief," with nothing tying the rumor to the contract at issue. *Abels v. JBC Legal Grp., P.C.*, 233 F.R.D. 645, 647–48 (N.D. Cal. 2006). *Stanich* reached the same result for the same reason—generalized suspicion, no showing—while recognizing that such discovery is proper where the agreement's terms are "clearly relevant to potential conflicts with absent class members." *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009). Freeway is not guessing at unseen agreements. HLF produced two of them, their extraordinary terms are in the record, and a court in the same district has already condemned their central feature. That is the showing *Abels* and *Stanich* found missing.

HLF's answer—that the power-of-attorney clause is lawful (at 11), an issue the Oregon court must decide in any event—rests on two cases that held no such thing. *Jacobsen* concluded only that an unenforced settlement-authority clause did not void a fee contract where no settlement offer ever arose to trigger it, but the court recognized that actually enforcing such a clause would violate public policy. *Jacobsen v. Oliver*, 555 F. Supp. 2d 72, 79–80, 89 (D.D.C. 2008). And *C.P.R. Construction* asked only whether the clause gave counsel actual authority to bind a client to a settlement he later tried to repudiate—no party challenged its ethical propriety, and no class representative was involved. *First Fed. Sav. & Loan Ass'n of Walla Walla v. C.P.R. Constr., Inc.*, 689 P.2d 981, 984–85 (Or. Ct. App. 1984). Neither case blesses what *Slevin* condemned.

HLF's attack on Freeway's "positions" as "irreconcilable" (at 18) dies on the face of the document it quotes. The same certification motion HLF cites for the phrase "without further discovery" announced this very subpoena: "[a]dditional third-party subpoenas to the Heidarpour Law Firm (for records relating to how it originated and referred this claim and others) are forthcoming." ECF No. 4-2 at 26. There is no contradiction between a motion and the subpoena it expressly promised. Nor is there a concession. Freeway's position in Oregon is that the record it

already holds compels denial of certification; the subpoena tests whether even that record is complete—whether the two agreements HLF chose to produce are authentic and exhaustive, whether others exist, and who else holds an interest in Wilson's claims. Adequacy is Wilson's burden to prove, and Freeway is entitled to the evidence that tests his proof. A party's confidence in the record is not a waiver of the discovery it is owed.

The fishing-expedition cases fare no better, because each turns on a fact absent here: the requesting party had no pled defense and no evidentiary anchor connecting the discovery to the underlying case. In *Jiang*, NVIDIA sought testimony to support an affirmative defense it had never pled. 2026 WL 962496, at *6. In *Diamond Services*, the premise lacked "a modicum of objective support." 339 F.R.D. at 340. Freeway has that anchor twice over. Freeway pleaded the defenses this discovery supports—fraud, consent, and unclean hands. Watstein Decl. Ex. 10, Freeway's Answer & Aff. Defenses ¶¶ 32–33, 75, 96. And Freeway is entitled to obtain discovery on Plaintiff and his counsel's adequacy to serve as a class representative of the putative class, a position they've pleaded they're adequate to hold. Likewise, sanctions authority requires no pleading at all—it is inherent. Whichever ground the Court looks to, the agreements HLF produced, the interest HLF concedes, and Wilson's sworn testimony and public statements supply exactly the anchor *Jiang* and *Diamond Services* found missing.

HLF's last relevance attack (at 10) answers a theory Freeway never advanced. HLF points to a chronology: the lead form underlying this case was created on June 4, 2024, months before Wilson first contacted HLF on October 3, 2024. From that gap it asks the Court to infer that no claim could have been "manufactured." The gap proves less than HLF thinks. Freeway does not contend that every HLF-originated claim is a fabrication—it has said the opposite from the start: HLF recruits clients with some legitimate claims and then manufactures others to further monetize

19

the plaintiffs in whom it has a perpetual financial interest. ECF No. 4-4 at 19–20. Its concern is what HLF and its network do with a plaintiff once they have them locked in—how a matter that may start out legitimately is then worked, inflated, and monetized for the lawyers' benefit rather than the client's or the class. *See Slevin*, 2026 WL 892186, at *11–15 (finding bad faith where a claim grew from a real tester's visit, but counsel padded the demand, misrepresented the record, and abandoned the client's interest to extract a fee). An October 2024 start date does not answer that concern—it marks where the concern begins.

And whether HLF manufactured any of Wilson's later claims is independently relevant no matter what happened here. Freeway has already traced lead forms in HLF-referred matters to the plaintiff's own IP address and watched demand letters vanish the moment fraud was raised. ECF No. 4-3 ¶¶ 46–48. A manufactured claim anywhere in Wilson's portfolio bears on his adequacy, the sanctions record, and the propriety of dismissing this case to shut the inquiry down. Finally, the timeline HLF offers is not a fact—it is HLF's say-so. When the firm first learned of Freeway's messages, and when it first communicated with Wilson, is precisely what Requests 1–3 ask. HLF cannot defeat a subpoena by declaring its own answers to the questions it resists and demanding they be taken on faith.

The exhibit HLF showcases for this charge—the subpoena Freeway's counsel served in *Bronstin v. Southern California Edison Co.*, No. 8:25-cv-2334 (C.D. Cal.) (at 13)—proves the opposite. That subpoena was not plucked from the air: Bronstin's own phone records show calls with HLF shortly before some of the very calls Bronstin sued over. *See* Watstein Decl. Exs. 11, 12. Freeway's counsel, who also defended that case, extended HLF the courtesy of contacting its lawyers before attempting personal service. *Id.* What happened next is familiar: the day after the subpoena was served, Bronstin reached out—unprompted—to dismiss his own putative class

action with prejudice. *Id.*, Ex. 13. HLF now tells this Court (at 13) it had "no role whatsoever" in the Bronstin case. Those words are chosen carefully—no role in the case is not no relationship with the plaintiff. When Freeway asked, directly and twice, whether HLF contends it has no relationship with Bronstin, HLF's counsel never answered. *Id.* ¶ 21, Ex. 12. A subpoena grounded in the target's appearance in the plaintiff's phone records is not a fishing expedition. And a plaintiff who offers to abandon his case with prejudice the day after HLF is subpoenaed is not evidence of Freeway's counsel's bad faith—he is evidence of the exact issues Chief Judge McShane is deciding.

That leaves mootness. *Apollo Group*—unpublished and non-precedential—addressed a subpoena after the underlying trial proceeding had actually ended; the subpoena "derives whatever force it has from being sought in aid of trial." 329 F. App'x 283, 284 (D.C. Cir. 2009). Nothing here has ended. The dismissal is contested, its terms are undecided, the certification motion is being briefed by court order, and the sanctions record survives regardless. Even *Apollo* cuts against HLF on its own terms: the panel faulted Apollo for never using the tools available to coordinate parallel proceedings—stays, extensions, expedition. *Id.* at 284–85. Freeway is using exactly those tools in Oregon. HLF asks this Court to nullify them. Its mootness theory is not a defense of Wilson's case. It is a plan to evade discovery in it, and the Court should not bless it.

### 3. The Requests Are Narrow by Design, and Nothing They Seek Is Privileged

The requests are intentionally narrow. Each asks for documents "sufficient to identify" discrete facts in bounded categories, over defined periods. Watstein Decl. Ex. 3. Even Requests 10–12, HLF's chief overbreadth target (at 21), cover a single relationship—HLF's referral and financial arrangements concerning one client's claims—over two and a half years. Freeway could have asked for HLF's referral and financial arrangements in all TCPA class actions brought by

21

Wilson's litigation counsel, which would show their abuse of process extends to hundreds of other lawsuits across the country—information that would be highly relevant to their adequacy as class counsel. But Freeway did not. It just asked for the documents relating to Wilson. And Freeway narrowed further in conferral, withdrawing its requests for additional documents on Requests 1, 2, and 8, as HLF acknowledges (at 6 n.2).

The cases HLF cites confirm what overbreadth actually looks like. *Edwards* confronted a demand for "every sheet and scrap of paper" in the respondent's files. 94 F.R.D. 584, 585 (D.D.C. 1982). *Dell* quashed open-ended requests for all documents relating to a decade of licensing work. 233 F. Supp. 3d at 3–4. *Center for the Study of Social Policy* quashed requests reaching "virtually every document" the nonparty possessed, across a decade and six jurisdictions. 659 F. Supp. 3d at 60–61. This subpoena is the opposite of all three. *Center for the Study of Social Policy* itself declined to quash a targeted, matter-specific request of comparable scope. *Id.* at 61–62.

What HLF offers against this is adjectives. Its declaration describes a small firm—two lawyers, limited staff (one of whom—likely Wilson's primary contact at the firm—served federal time for millions in fraud on the government, similar to the litigation fraud Freeway suspects here)[1]—but never quantifies the burden of producing identification documents about a single client's matters. That cuts against HLF twice: a small firm's records concerning one client are, by definition, a compact universe, and *Jiang* holds that producing a "relatively limited swath" of such documents, with a privilege log for the rest, is manageable and "not undue." 2026 WL 962496, at *4 n.4, *8. The burden showing is HLF's to make—with evidence. It has made none. A third party seeking to quash a subpoena as unduly burdensome must "demonstrate[] how the document [request] is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence

---

[1] *See* ECF No. 4-3 ¶¶ 36–40.

which reveals the nature of the burden." *In re Mot. to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 295 (D.D.C. 2019) (quotation omitted). HLF's entire showing is one sentence of its principal's declaration: compliance "would require HLF to divert resources from other representations to search for, collect, and review materials and to prepare for a corporate deposition, at significant expense to the firm." ECF No. 1-1 ¶ 8. Such "boilerplate objections . . . carry no weight," and, as in *Cooke* itself, HLF "has failed to articulate, let alone demonstrate by affidavit or evidence, that compliance with the subpoena would be overly burdensome or unfeasible." *Cooke Legal Grp.*, 333 F.R.D. at 295. Courts in this district compel compliance on far weaker records. *See United States v. Newman*, 531 F. Supp. 3d 181, 191 (D.D.C. 2021) (compelling a Department of Justice attorney to sit for a deposition where the government "offer[ed] only conclusory statements that are insufficient to carry its burden of persuasion"); *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 196 (D.D.C. 2003) (compelling a law firm to produce documents concerning payment of the judgment debtor's legal fees, and rejecting the argument that the information should be sought from the debtor instead, where the debtor had not paid the judgment and had hired the lawyers to limit discovery into assets that could satisfy it). Nor can it ever make that showing, given it has produced the same information requested here before Freeway filed a motion seeking to use that information to expose an abuse of the federal court system of a monumental scale.[2]

---

[2] The relevance of that exposure is not limited to this case. Farideh Heidarpour—the mother of HLF's principal and, per HLF's own declaration, one of its few employees—pleaded guilty to healthcare fraud, served federal prison time, and paid nearly $1.7 million to resolve a related False Claims Act suit before the family moved into TCPA litigation. ECF No. 4-3 ¶¶ 36–40. Freeway has already identified a pattern in claims HLF has referred to litigation counsel: lead forms traced by IP address to the plaintiff's own location, and demand letters and cases that disappear the moment Freeway raises the possibility of fraud. *Id.* ¶¶ 46–48. Freeway believes that pattern extends to some of Wilson's claims, and the requested documents bear on whether it does.

23

Privilege does not fill the gap. Freeway disclaimed, in writing, the substance of any communication conveying or requesting legal advice—as HLF acknowledges (at 22 n.6). What remains are facts: when HLF learned of the claims, who accessed which accounts, who signed which agreements, and who gets paid what. That is not legal advice—which by all accounts HLF did not give Wilson in any event. HLF is a lead generator with a power of attorney to sue and resolve cases without Wilson's involvement, not a normal law firm that advises clients on an ongoing basis about their legal troubles. Nor would the privilege stretch that far even in a genuine advisory relationship. Courts in this Circuit "more narrowly define[] the attorney-client privilege to protect from disclosure the communications made by the client to the attorney for the purpose of seeking legal advice." *Evans v. Atwood*, 177 F.R.D. 1, 3 (D.D.C. 1997) (citing *Tax Analysts v. Internal Rev. Serv.*, 117 F.3d 607, 617 (D.C. Cir. 1997)). And privilege does not reach facts. *Brinton v. Dep't of State*, 636 F.2d 600, 603–04 (D.C. Cir. 1980) ("[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.").

The specific records HLF resists are the textbook examples of what privilege does not cover. "[T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) (citations omitted). Courts in this district order law firms to produce exactly these categories: retainer letters and billing records, *United States v. Naegele*, 468 F. Supp. 2d 165, 171 (D.D.C. 2007) (such records "must be produced"); records of fee and cost payments, *GFL Advantage Fund*, 216 F.R.D. at 195 ("impossible to understand how" such records "could possibly fall within the attorney-client privilege"); and invoices and payment records, *Fudali v. Pivotal Corp.*, 2010 WL 4910263, at *2 (D.D.C. Dec. 2, 2010) ("[i]nvoices, payments, addresses, and insurance policies

24

hardly threaten" any privileged disclosure). And blanket privilege claims asserted over entire categories of requests, without differentiation, fail. *Cooke Legal Grp.*, 333 F.R.D. at 295–96.

HLF's own work-product authority protects an attorney's "assessments, thought processes, analyses and strategy"—not the underlying facts of who did what, when, and under what financial arrangement. *United States v. Paxson*, 861 F.2d 730, 735–36 (D.C. Cir. 1988). The requests are drafted to that line. They ask who performed technical, intake, or claim-identification work, and when—the fact of the activity, not HLF's evaluation of anything. If a particular document crosses into evaluative territory, the remedy is the privilege log *Jiang* required, not categorical immunity; and if a particular phrase in a request reaches too far, Rule 45's remedy is to modify it—the lesser relief HLF never sought—not to quash twelve requests. And even fact work product yields on a showing of substantial need where no substantial equivalent exists elsewhere. Fed. R. Civ. P. 26(b)(3)(A)(ii). That showing is the whole of Section A.1: these facts live in HLF's files and nowhere else. And Wilson has already told the world the central access fact under oath: he gave law-firm personnel his iCloud credentials to mine five years of his accounts. Wilson Dep. 68:16–69:16. A fact the client broadcasts is not privileged.

HLF's own conduct confirms the point. It voluntarily produced Wilson's engagement letters when it believed they helped—redacted, on its own terms, relenting only when Freeway pressed—and stamped them "highly confidential" under a protective order that does not exist. ECF No. 4-5 ¶¶ 13–15. A party cannot produce the parts of a record that suit it and claim privilege over the rest. If HLF believes specific documents are privileged, the rule supplies the remedy, and *Jiang* applied it: a privilege log, not immunity. 2026 WL 962496, at *8. Privilege protects legal advice. It does not protect the financial records of a referral business.

25

**B.      The Deposition Should Be Deferred, as Freeway Proposed—Not Quashed**

The deposition presents a timing question, not a quashing question. In conferral, Freeway offered to hold the deposition "entirely in abeyance" pending a ruling on any motion to quash—the very interim relief HLF's "emergency" motion then demanded, and the relief this Court's stay now supplies. ECF No. 4-1 at 3–9; Minute Order (June 25, 2026). Freeway is now willing to go further. It proposes that the deposition follow document production by thirty days. In the interim, Freeway will confer in good faith with HLF, to the extent necessary, and modify or withdraw any topic the production fully answers. And if HLF still believes the deposition should be quashed or narrowed after that, it can seek that relief then—on a proper record, rather than in advance of one. That is the sequence HLF's own lead case charted—documents first, because production gives the requesting party "a far more credible hook for seeking follow-up discovery through a targeted deposition." *Jiang*, 2026 WL 962496, at *7. Production will either narrow the deposition topics or moot them.

Quashing a deposition outright is the rarest form of relief. Depositions "rank high in the hierarchy of pre-trial, truth-finding mechanisms" and "are a critical component of the tools of justice in civil litigation." *Founding Church of Scientology of Wash., D.C., Inc. v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986); *see* Fed. R. Civ. P. 30(a). Orders prohibiting a deposition altogether are therefore "rarely granted absent extraordinary circumstances." *Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005)(quotation omitted) (denying even a minor child's motion to quash a deposition subpoena and requiring her to sit for one). The quashing cases HLF assembles (at 21–23) share none of this posture. Each turned on at least one of four conditions. Some courts allowed the discovery and merely narrowed it to information of which the subpoenaed party was the only source. *Coleman*, 284 F.R.D. at 19–21; *Corp. for Pub. Broad., Educ. Broad. Co. v. Am. Auto. Centennial Comm'n*, 1999 WL 1815561, at *1–2 (D.D.C. Feb. 2,

26

1999) (barring a deposition only conditionally, where the attorneys had no personal knowledge of the negotiations at issue). Some involved a party seeking counsel's legal opinions or mental impressions. *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380–85 (D.D.C. 2011); *In re an Order Pursuant to 28 U.S.C. § 1782*, 2017 WL 3708028, at *4–6 (D.D.C. Aug. 18, 2017). One was quashed without prejudice to the requesting party returning with better support. *Wilson v. Scruggs*, 2003 WL 23521358, at *1–2 (S.D. Miss. Apr. 10, 2003). And one involved a movant that lacked a pled defense the testimony would support—and had a viable alternative witness for the same information. *Jiang*, 2026 WL 962496, at *5–8.

None of those conditions exists here. The information Freeway seeks goes to adequacy, which Wilson bears the burden to prove, and to sanctions, over which the Court retains inherent authority aside from the merits of the case. Freeway has also pleaded fraud and unclean hands defenses tied directly to HLF's undisclosed role. Watstein Decl. Ex. 10 ¶¶ 32–33, 75, 96. The topics seek concrete facts—dates, identities, and financial terms—not legal theories or strategy. Watstein Decl. Ex. 3. HLF has already produced two contingent-fee agreements bearing on the very arrangement it now calls privileged. And there is no alternative witness: Wilson does not know who HLF referred his claims to, on what terms, what demand letters HLF sent on his behalf via power of attorney, what agreements HLF signed on his behalf, or who accessed his accounts on HLF's behalf. Wilson Dep. 69:5–12.

The deposition is also where HLF's own story gets tested. HLF's motion rests on declarations—its principal's account of when the firm first learned of Wilson, what its personnel did with his accounts, and what its files contain. A deposition exists to examine exactly that kind of account live, "where there is no opportunity to reflect and carefully shape the information given." *Alexander v. FBI*, 186 F.R.D. 113, 121 (D.D.C. 1998) (citation and quotation omitted).

27

Requiring Freeway—and the Court—to take attorney-drafted declarations and a 14-page production at face value, with no cross-examination ever, is inconsistent with the truth-finding purpose of deposition discovery. *See Shvartser v. Lekser*, 292 F. Supp. 3d 272, 276 (D.D.C. 2018) (compelling a further deposition of a third party who "refused to give meaningful answers"). As in *Coleman*, the motion should be denied precisely because HLF is the only source of the information sought.

*Shelton* does not supply the categorical rule HLF wants. Courts in this district have declined to adopt it. *Jiang*, 2026 WL 962496, at *4 (following *Mannina v. District of Columbia*, 334 F.R.D. 336, 340 (D.D.C. 2020)). And *Shelton*'s framework presupposes the deposition of opposing trial counsel—a premise HLF itself disclaims, because it concedes it is not counsel of record in the Wilson case (at 5). Even *Dell*, HLF's own overbreadth authority, permitted the attorney depositions to proceed. 233 F. Supp. 3d at 4. HLF cannot claim the protections of trial counsel while insisting it is a stranger to the trial. The Court should reject HLF's motion and adopt the sequence Freeway proposes: production, thirty days, conferral, and a deposition limited to what remains. Quashing it now would convert a timing question into permanent immunity, keeping the degree of abuse of the federal court system in the dark, where HLF wants it.

### C.    HLF's Fee Request Gets the Record Backwards

There is no basis for fees, other than in Freeway's favor. Rule 45(d)(1) sanctions punish an issuing party that fails to "take reasonable steps to avoid imposing undue burden or expense" on a subpoena recipient. Fed. R. Civ. P. 45(d)(1). Freeway's record is the opposite of that. It extended HLF's deadline to respond to the document requests. It moved the deposition at HLF's request. It narrowed Requests 1, 2, and 8 in conferral. It offered to hold the deposition "entirely in abeyance" pending any motion to quash. And it kept conferring—through June 23, when HLF's lawyers were still promising to consult their client on open questions. ECF No. 4-1 at 8. HLF spent all that time

28

preparing a motion and then sprang it on the eve of Freeway's lead counsel's trial by way of a manufactured emergency. *Id.* at 3–4. Courts in this district deny fees on far thinner records. In *Goldberg v. Amgen, Inc.*, the court denied fees even though the issuing party kept pressing after the subpoenaed witness repeatedly represented that he had no further information—because the parties had conferred in good faith for six weeks. 123 F. Supp. 3d 9, 17–19, 22–23 (D.D.C. 2015). Freeway did everything *Goldberg* credits, and more.

HLF's own fee cases (at 24–25) prove the point. In every case it cites where fees were awarded, the issuing party refused to narrow an admittedly overbroad subpoena and pressed forward even after being told—by the court, by sworn declaration, or by the recipient's repeated representations—that the information sought did not exist, had already been disclosed, or was categorically privileged. *Saint-Jean* involved subpoenas served on opposing counsel hours after an unsupported accusation, with three-day return dates, seeking "any and all" communications the issuer already possessed by sworn declaration—subpoenas the court said "should never have been issued." *Saint-Jean v. Emigrant Mortg. Co.*, 2015 WL 13735434, at *1–5 (E.D.N.Y. Oct. 7, 2015). *Huntair* awarded fees only after the issuer moved to compel full compliance with a subpoena that would have cost $150,000 and disclosed trade secrets to competitors, rather than accept the narrowing the recipient had already proposed. *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679–80 (N.D. Okla. 2008). And *BMO Harris* awarded fees where the issuer made no attempt to narrow an admittedly broad subpoena and forced the non-party to move. *BMO Harris Bank, N.A. v. Richert Funding, LLC*, 2017 WL 11627485, at *10–12 (N.D. Ga. July 3, 2017). Nothing in that pattern describes Freeway's conduct.

If any party's conduct here resembles the fee cases, it is HLF's. HLF invoked Rule 45(d) fees twice during conferral—not after impasse, but as leverage to extract concessions while the

29

parties were still talking. ECF No. 4-1 at 16–17, 22–23. Freeway told HLF exactly what it thought of that tactic: it was not intimidated by the threat, and any fee motion "would be frivolous." *Id.* at 20. HLF filed one anyway. It declared impasse by email while conferral was ongoing and filed—two hours later—an "emergency" motion timed to the first day of Freeway's lead counsel's trial, resting on an account of the conferral record that Freeway had to correct by Notice. ECF No. 3; ECF No. 4-1. And the "threat" HLF cites (at 24) was Freeway's statement that it would serve subpoenas in other matters where appropriate—ordinary coordination of related litigation, not misconduct. Rule 45(d)(1) exists to deter gamesmanship, not to fund it. HLF's fee request should be denied. And if fees run in any direction here, they run toward Freeway: a court's inherent authority reaches litigation conduct undertaken in bad faith, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991), and the manufactured "emergency" just described is that conduct.

## V.    CONCLUSION

What HLF did with Wilson's claims—and for whose benefit—is knowable only from HLF. That is a reason to enforce this subpoena, not to quash it. So is the certification briefing now underway in Oregon: the court deciding whether Wilson may represent absent class members should decide it on a complete record. The Court should deny HLF's motion in its entirety, with the deposition to follow document production by thirty days, as Freeway has proposed. And it should exercise its inherent authority to award Freeway the fees it incurred in responding to the motion—or, at a minimum, the fees it incurred in correcting the record regarding the false emergency HLF manufactured.

Dated: July 8, 2026

*/s/ Ryan D. Watstein*
Ryan D. Watstein (admitted *pro hac vice*)
ryan@wtlaw.com
James M. Ruley (admitted *pro hac vice*)
jruley@wtlaw.com
**WATSTEIN TEREPKA LLP**
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Tel: (404) 783-0695

Attison L. Barnes, III (DC Bar No. 427754)
Cameron B. Wolfe (DC Bar No. 90005487)
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202-719-7000
Fax: 202-719-7049
abarnes@wiley.law
cbwolfe@wiley.law

*Attorneys for Defendant Freeway Insurance
Services of America, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 8, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

DATED: July 8, 2026

*/s/ Ryan D. Watstein*
Ryan D. Watstein